IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| TROY H. BRADFORD AND GLORIA ) <br> BRADFORD, Individually and as Class ) <br> Representatives on Behalf of All ) <br> Similarly Situated Persons; and ) <br> BOOKS ETC., by and through TROY ) <br> AND GLORIA BRADFORD, Class ) <br> Representatives on Behalf of All Those ) <br> Similarly Situated; ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> ) <br> VS. ) <br> ) <br> ) <br> UNION PACIFIC RAILROAD ) <br> COMPANY, A Delaware Corporation, ) <br> and J.L. Gordan, an Arkansas Resident ) <br> ) <br> DEFENDANTS, ) | Case NO: 4:05-cv-4075 HFB |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED
CLASS ACTION COMPLAINT**

**AND**

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO REMAND TO MILLER COUNTY, ARKANSAS**

COME NOW the Defendants, Union Pacific Railroad Company and J.L. Gordon (hereinafter Union Pacific or Defendants) and submit their Response to Plaintiffs' Motion For Leave to File Second Amended Class Action Complaint and their Response to Plaintiffs' Motion to Remand, and would further show this Honorable Court that original jurisdiction of this action lies solely in the United States District Court for the Western District of Arkansas and Plaintiffs' motions should in all things be denied.

## PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint in Miller County, Arkansas, Circuit Court on October 19, 2005, against Defendant Union Pacific Railroad Company. While alleging Arkansas as the **individual** Plaintiffs' state of residency, Plaintiffs failed to limit the citizenship of the **purported class members** and asserted claims against only one defendant, Union Pacific Railroad Company, a "foreign corporation." Accordingly, as of the date of the filing of the original complaint, diversity was complete, a class action was proposed, and original jurisdiction vested in a federal district court.

Plaintiffs amended their complaint to include J.L. Gordan [sic] on October 25, 2005. Again, Plaintiffs defined their class as including all persons injured personally, property or business without any limitation on the citizenship of their **proposed class.** Defendants removed the action to this Court on October 26, 2005, based on the originally filed complaint. Following notification of the First Amended Complaint, however, Defendants filed their Second Notice of Removal on November 1, 2005. The removal was proper.

On November 14, 2004, Plaintiffs filed their Motion for Leave to File Second Amended Class Action Complaint seeking to limit the "citizenship" allegation of the purported class. Contrary to their assertion to this Court that, "Here, Plaintiffs do not offer any new substantive factual allegations but seek to change their allegations that parties are 'residents' of Arkansas to allegations that they are 'citizens' of Arkansas,"[1] Plaintiffs actually re-defined their class definition in the proposed Second Amended Complaint in a transparent attempt to undermine this Court's jurisdiction pursuant to the

---

[1] Plaintiffs' Motion For Leave To File Second Amended Class Action Complaint, page 1, ¶ 4.

Class Action Fairness Act.  In the first two complaints filed by Plaintiffs, Plaintiffs defined their class as, "All the Plaintiffs, the proposed class representatives, and prospective class members were all injured within Texarkana, Arkansas, County of Miller."  *See Original and First Amended Complaints*, ¶ 1.  This definition is not limited to Arkansas citizens and includes citizens of any state who happened to be present when the incident occurred or who owned property or business in the area.  While telling the Court that they requested merely to change the wording of their Complaint from "residency" to "citizenship," Plaintiffs actually are seeking a substantive redefinition of their proposed class by inserting the following language in their new proposed class definition: "All the Plaintiffs, the proposed class representative, and prospective class members ***are citizens of Arkansas*** and were injured within Texarkana, Arkansas, County of Miller."  *Proposed Second Amended Complaint*, ¶ 1 (emphasis added).  As such, Plaintiffs now seek to limit their class from citizens of various states may have been affected by the incident to only "citizens" of Arkansas.  Accordingly, Defendants oppose all amendments sought by Plaintiffs because the amendments seek to evade federal jurisdiction previously vested and are contrary to the Class Action Fairness Act and applicable law.  As such, Plaintiffs' Motion for Leave To File Second Amended Class Action Complaint should be denied.

  Defendants' removal of this action is predicated on and proper pursuant to the Class Action Fairness Act of 2005 (CAFA), in that this Court had "original jurisdiction" over this action on the date of the filing of the Original Complaint on October 19, 2005.  In addition, Plaintiffs fail to meet any exception to the "original jurisdiction" of this Court pursuant to the Class Action Fairness Act of 2005.  Accordingly, Plaintiffs' Motion

to Remand should be denied. In the event the Court allows Plaintiffs to amend their Complaint, Plaintiffs still fail to satisfy the exceptions to CAFA, and remand is improper.

## ARGUMENT

### A. This Court Has Original Jurisdiction Of This Matter Pursuant To CAFA

The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), provides:

district courts **shall** have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –

(A)  *any* member of a class of plaintiffs is a citizen of a State different from *any defendant*;

(B)  any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C)  any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(Emphasis added). The present case is brought as a purported class action. *Original and First Amended Complaint*, ¶¶ 7-12. While Plaintiffs' allegations are silent as to the amount in controversy, they bear the "burden of demonstrating that the removal was improvident . . . ."[2] Indeed, "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."[3] As such, Defendants assert that the Court should consider these Plaintiffs to seek a sum or value in excess of $5,000,000 for the sole purpose of remand consideration and

---

[2] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act Of 2005, Senate Report No. 109-14, pg. 42, February 28, 2005.

[3] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act Of 2005, Senate Report No. 109-14, pg. 42, February 28, 2005.

4

also find that the amount in controversy necessary for § 1332(d)(2) application is satisfied.

Plaintiffs' complaint further alleges that Troy Bradford and Gloria Bradford are "long-time" residents of the State of Arkansas.[4] *Original Complaint and First Amended Complaint*, ¶ 3. Plaintiffs have alleged that Defendant Union Pacific Railroad Company is a foreign corporation with its principal place of business in a state other than Arkansas. *Original Complaint and First Amended Complaint*, ¶ 5. Accordingly, diversity exists between "any member" of the purported class and "any defendant" pursuant to 28 U.S.C. § 1332(d)(2)(A).

Finally, Plaintiffs' allegations, although denied, purport to bring a class on behalf of "thousands." As such, the purported class is allegedly well in excess of the minimum number required pursuant to 28 U.S.C. § 1332(d)(5)(B). *Original and First Amended Complaint*, ¶ 12.

Because all of the elements of § 1332(d)(2) are satisfied, a federal district court had "original jurisdiction" of this action at the time the suit was first filed and "original jurisdiction" continues within this federal district court pursuant to 28 U.S.C. § 1332(d)(2). Further, even if the Court were to view the First Amended Compliant as applicable, all of the § 1332(d)(2) requirements were satisfied at the time of removal and "original jurisdiction" vested with this Court at that time. As such, Plaintiffs' Motion to Remand should be denied.

---

[4] Contrary to Plaintiffs' assertions in their Brief at Footnote 2 wherein they assert that Defendants concede that "well over two-thirds of Plaintiffs are citizens of Arkansas" because Defendants stated in their Second Notice of Removal that "Plaintiffs were citizens of the State of Arkansas," Defendants have conceded nothing of the sort and made no representation concerning citizenship of putative class members. Defendants removed based on the complete diversity between the named plaintiffs (Troy Bradford, Gloria Bradford, and Books Etc) only. Until any class is certified, these are the only Plaintiffs in the case.

## B. Plaintiffs' Second Amended Complaint Cannot Cure The Citizenship Defect At The Time of Removal Because The CAFA Examination Begins Upon The Filing Of The Original Complaint.

Defendants oppose the filing of Plaintiffs' Second Amended Complaint because it seeks to destroy federal "original jurisdiction" that has already been established. Neither this latest attempted filing nor any previous amendments to the original Complaint displace this Court of original jurisdiction pursuant to CAFA. To begin, CAFA applied to Plaintiffs' Original Complaint on the date of its filing. *See* 28 U.S.C. § 1332(d)(7). The intent of § 1332(d)(7) was discussed in the Committee's Report.[5] Congress stated that the purpose of 1332(d)(7) was to "clarif[y] that the citizenship of members of proposed classes would be determined as of the date the action was filed. Thus, questions about whether two-thirds of the members of a proposed class were citizens of a particular state would be determined as of that date." *Id*. As of the original filing of Plaintiff's Complaint on October 19, 2005, Plaintiffs' proposed class was not limited to any particular state to invoke any CAFA exception (i.e. 28 U.S.C. § 1332(d)(4)(A)(i)(I) requiring greater than "two-thirds" of the members of all proposed plaintiff classes in the aggregate are citizens of the same state) and there was only one named defendant: Union Pacific Railroad Company, a foreign corporation. Indeed, the Original Complaint (as well as the First Amended Complaint) identified the class as essentially any person within the geographical boundaries alleged on October 15, 2005. No limitation of "two-third" membership was alleged. As such, this Court's original jurisdiction and the provisions of 28 U.S.C. § 1332(d)(2) were unambiguously vested without the application

---

[5] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act Of 2005 Senate Report No. 109-14, pg. 44, February 28, 2005.

of any exception on October 19, 2005, and could not be altered by subsequent amendments.

While Defendant agree that amendments are generally liberally granted and that the *Sanders* case found error in the dismissal of a complaint for failure to allege citizenship without the opportunity to amend, CAFA is clear that "original jurisdiction" lies with the District Court once invoked. At the time of the filing of Plaintiffs' Original Complaint, complete diversity existed and Plaintiffs did not limit their class to any exception of CAFA. As such, this Court was vested with "original jurisdiction" upon the filing of the complaint. In addition, Defendants assert that once federal "original jurisdiction" was invoked by that filing, no subsequent amendment could defeat that jurisdiction, to include the First Amended Complaint, because no other court but this Court had jurisdiction over the case.

Should the Court find that it is not the original pleading that is to be examined, Defendants contend that at the time of removal, the First Amended Complaint also failed to limit the citizenship of the plaintiff class. In this regard, Plaintiffs failed to allege facts sufficient to meet the exceptions stated at §§ 1332(4)(A)(i)(I) (the "two-thirds" citizenship). Subsequent amendments cannot divest this Court of its jurisdiction over the case.

As Congress noted in the Report, "The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot 'oust' the federal court of jurisdiction."[6] Further, "While plaintiffs

---

[6] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act Of 2005 Senate Report No. 109-14, pg. 43, February 28, 2005; *see also James Neff Kramper Family Farm Partnership v. IBT, Inc.*, 393 F.3d 828, 834 (8th Cir. 2005) (stating, "Although our jurisdictional inquiry focuses on the claims made at the time of the removal, such that certain subsequent events—for example, the dismissal of one or more claims or

7

undoubtedly possess some power to seek to avoid jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court." *Id*.  As such, CAFA was irrevocably invoked because no allegations supported any exception to § 1332(d)(2), both at the time it was originally filed and at that time it was properly removed.  Accordingly, remand should be denied.

### C.  Plaintiffs Do No Meet The 28 U.S.C.§ 1332(d)(4)(A) Exception To CAFA And Remand Should Be Denied

Plaintiffs further attempt remand pursuant to 28 U.S.C. § 1332(d)(4)(A) or the "local controversy" exception to CAFA.  Plaintiffs correctly cite to the applicable language of this exception at Footnote 1 of their Brief.  While Defendants also agree, as stated by Plaintiffs, that the language of this section is "unambiguous," the focus by Plaintiffs on the first sentence of the exception is misplaced.  The unambiguous provisions of the exception that are fatal to Plaintiffs' argument for remand lies in that fact that they have not limited the "super majority" percentage of their proposed class as Arkansas citizens and they do not seek "significant relief" from J. L. Gordon as required by §§ 1332(d)(4)(A)(i)(I) and 1332(d)(4)(A)(i)(II)(aa).

To begin, the congressional intent regarding the "local controversy" exception is explained as follows, "At the same time, this is a ***narrow exception that was carefully drafted to ensure it does not become a jurisdictional loophole.***" [7]  In analyzing the "local controversy" exception as it relates to the present case, pursuant 28 U.S.C.A. § 1332(d)(4), district courts must decline jurisdiction **only where all four** circumstances

---

parties—do not divest us of jurisdiction, . . . ."); and *Klepper v. First American Bank*, 916 F. 2d 337, 340 (6th Cir. 1990) (stating, "Jurisdiction, once established, cannot be destroyed by a subsequent change in events.").

[7] S. Rep. 109 –14, P.L. 109-2, The Class Action Fairness Act of 2005 Senate Report No. 109- 14, pg. 39, February 28, 2005 (emphasis added).

are met: (I) greater than two thirds of the members of the proposed plaintiff classes are citizens of the original filing state; (II) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was originally file; (III) the principal injuries resulting from the alleged conduct of each defendant were incurred in the original filing state; and (IV) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action.

As stated above, Defendants do not concede that "greater than two thirds" of the purported class are citizens of the State of Arkansas: no such allegation was made in Plaintiffs' first two class action complaints and nothing exists in this record to establish that this is true for the class as originally defined before removal.  In the Original and First Amended Complaints, Plaintiffs defined the class by geographical boundaries and those persons who personally, or whose property or business, may have been "proximately located" within said geographical boundaries from 5:00 a.m. on October 15, 2005, to October 16, 2005.[8]  Nowhere in the Original Complaint and the properly removed First Amended Complaint do Plaintiffs allege that this is an "Arkansas" class or that any proposed class is comprised of at least "two-thirds" Arkansas citizens.  Indeed, many of the proposed "sub-classes" in the first two complaints could involve persons from outside the State of Arkansas who merely happened to be located in, owned property, or conducted business within Plaintiffs' definition of the class geographical boundary (and obviously in Texarkana, it would not be surprising for many Texas

---

[8] *Original Complaint and First Amended Complaint*, ¶ 10.

9

citizens to fall in that class as originally defined, and citizens of other states as well).  As such, Plaintiffs have failed to satisfy element (I) of § 1332(d)(4)(A)(i).  Leave should not be granted to amend the complaint, and remand should not be predicated upon Plaintiffs' subsequent attempts to divest this Court with jurisdiction.  Such acts are contrary to CAFA and applicable law.

Although Defendants deny the allegations as asserted by Plaintiffs in their Complaint, Defendants will state, for the purposes of this motion and response only, that the location of the accident in question and the alleged "related conduct" occurred within the State of Arkansas.  As such, an in-depth analysis of § 1332(d)(4)(A)(i)(III) is probably not required.  In addition, while more than one class action was filed as a result of the incident in question, Defendants are without knowledge of any proposed class action on behalf of these Plaintiffs against the Defendants within the last three years.  As such, and in-depth analysis of § 1332(d)(4)(A)(ii) is probably not warranted.

Therefore, the question of whether a "local controversy" exception is applicable further turns on whether the purported class action seeks "significant relief" from a "citizen" of Arkansas, Mr. J. L. Gordon.  The answer, in reality, is that the class does not.  Plaintiffs seek to cure the super-majority defect, but as stated before, once a properly removed complaint lies in federal court, subsequent events cannot change the jurisdiction.

Further, this case is the exact same case whether Mr. Gordon is a named defendant or simply an employee of Union Pacific.  As an employee of Union Pacific, Mr. Gordon affords the Plaintiffs no additional relief, causes of action, or the formation of any allegation apart from those allegations of which have already been alleged against

10

Union Pacific. Plaintiffs have failed to allege and cannot allege a single fact associated with Mr. Gordon that would differentiate their purported claims against him versus those against Union Pacific. If Plaintiffs truly seek "significant relief" against Mr. Gordon, they should be required to stipulate that any percentage of liability, if any, apportioned to his conduct by a jury will ultimately reduce the percentage of liability of and payment by, if any, Union Pacific. Only then can it be said that they have distinguishable claims upon which they seek "significant relief" from this separate Defendant and apart from him being an employee of Union Pacific.

      Plaintiffs further misstate the unambiguous language of the exception: they must seek "significant relief" from Mr. Gordon, not merely allege that his conduct created significant responsibility on his behalf. Not once do Plaintiffs tell this Court they will forego recovery from Union Pacific and pursue relief from Mr. Gordon separate from Union Pacific. More tellingly, Plaintiffs fail to explain to the Court how they will seek from Mr. Gordon the damages alleged in their Ad Damnum Clause, to include money damages, medical monitoring from this individual, or an injunction to clean and remediate and make safe the plaintiffs' homes, etc. Indeed, what Plaintiffs are after is the benefit of employment, agency, representative capacity, and scope of employment as alleged at Paragraph 14 for purposes of liability and then to obligate Union Pacific without the effect thereof on the issue of jurisdiction in federal court. This "gaming" is exactly the purpose behind the language found at § 1332(d)(4)(A)(i)(II)(aa).

      Defendants are unaware of any reported case wherein the provisions of § 1332(d)(4)(A)(i)(II)(aa) are interpreted or where the term "significant relief" is defined. Therefore, Defendants ask this Court to define terms such as "significant relief" in a way

that will further the congressional intent and promote the public purpose of the Act. To quote from the committee report, CAFA is an attempt to:

> "correct a flaw in the current diversity jurisdiction statute (28 U.S.C.S § 1332) that prevents most interstate class actions from being adjudicated in federal courts. One of the primary historical reasons for diversity jurisdiction 'is the reassurance of fairness and competence that a federal court can supply to an out-of-state defendant facing suit in state court.' Because interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the Committee firmly believes that such cases properly belong in federal court. To that end, this bill (a) amends section 1332 to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and (b) modifies the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire. **Thus, S. 5 makes it harder for plaintiffs' counsel to "game the system" by trying to defeat diversity jurisdiction,** creates efficiencies in the judicial system by allowing overlapping and "copycat" cases to be consolidated in a single federal court, places the determination of more interstate class action lawsuits in the proper forum-the federal courts." [9]

(Emphasis added). The legislative history of CAFA instructs that CAFA's jurisdictional provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if removed by any defendant." [10] In addition," if a Federal court is uncertain . . . the court should err in favor of exercising jurisdiction over the case." *Id*.

The Plaintiffs' decision to add an in-state defendant is an attempt at "gaming the system" and is specifically prohibited by CAFA. As the Committee Report noted, the intent of CAFA is, "that the local defendant must be a primary focus of the plaintiffs' claims – not just a peripheral defendant. The defendant must be a target from whom

---

[9] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act Of 2005 Senate Report No. 109-14, pg. 5, February 28, 2005.
[10] 151 Cong. Rec. H723-01, H-727 (2005).

significant relief is sought by the class (as opposed to just a subset of the class membership) . . . ." [11]

As stated above, it is Plaintiffs' own pleadings that belie their attempts to now argue that they seek significant relief from anyone except for Defendant, Union Pacific. Plaintiffs allege at Paragraph 14 of their original complaint:

> Any and all negligent acts and/or omissions alleged within this Complaint were caused by Defendant Union Pacific and/or its agent, employee, or representative who was acting within the course and scope of his/her employment with Defendant. Defendant Union Pacific is liable for the neglilgent [sic] acts or omissions of its agents and employees by virtue of the Doctrine of Respondeat Superior.

Plaintiffs specifically allege that Union Pacific Railroad Company, not J. L. Gordon, is "liable for the neglilgent [sic] acts or omissions of its agents and employees by virtue of the Doctrine of Respondeat Superior." As such, Plaintiffs own allegations reveal to this Court that they seek no relief from Mr. Gordon, but they seek all relief from Union Pacific by virtue of its alleged acts and the alleged acts of its employees.

In this regard, an examination of the doctrine of respondeat superior pursuant to Arkansas law may be useful. The doctrine of respondeat superior was formulated to treat employers as one with their employees.[12] As the *Barnes* court stated, "When the liability of a master for the tort of a servant is based solely on the doctrine of respondeat superior, a valid release of the servant operates to release the master." *Id*. As such, it is clear that for purposes of collecting a judgment, the employer and employee are seen as

---

[11] S. Rep. 109-14, P.L. 109-2, The Class Action Fairness Act of 2005 Senate Report No. 109-14, Pg. 40, February 28, 2005

[12] *National Security Fire & Casualty Co. v. Barnes,* 65 Ark.App. 13, 17, 984 S.W.2d 80, 82 (Ark. Ct. App. 1999)*; see also Rhodes v. Progressive Cas. Ins. Co.*, 36 Ark. App. 185, 820 S.W. 2d 293 (Ark. Ct. App. 1991).

13

one entity when the acts of the employee are examined.[13]  Accordingly, it is inconsistent to allow a plaintiff to join an employer and employee for purposes of **collecting** "significant relief," but then allow the Plaintiffs to sever the relationship for purposes of **seeking** "significant relief" in order to defeat federal jurisdiction.

In fact, Congress viewed this very scenario as the type of artful pleading that CAFA was designed to eliminate.  In addressing the "real local defendant" element, the Congressional Committee stated, "The defendant must be a target *from whom significant relief is sought by the class . . . .*" [14]  The Committee went on to illustrate:

> For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria.  He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiffs class viewed as a whole.  Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.[15]

As further evidence of Congress' intent for CAFA to exclude the naming of a nominal party with only the intent of defeating diversity, one only need to look at the definition of "primary defendant:"

> "primary defendents" [sic] be interpreted to reach those defendants who are the real "targets" of the lawsuit-i.e., the defendants that would be expected to **incur most of the loss** if liability is found."[16]

---

[13] *See also* Arkansas Code Annotated § 16-55-205, "Notwithstanding § 16-55-201, a party is *responsible* for the fault of another person or entity or for *payment of the proportionate share of another person* or entity if both the party and the other person or entity were acting in concert *or if the other person or entity was acting as an agent or servant of the party.*"  (Emphasis added).  By their own pleadings and through Arkansas law, it is incredible to think that Plaintiffs would ever seek any relief from Mr. Gordon.

[14] S. Rep. 109 –14, P.L. 109-2, The Class Action Fairness Act of 2005 Senate Report No. 109- 14, pg. 40, February 28, 2005 (emphasis added).

[15] S. Rep. 109 –14, P.L. 109-2, The Class Action Fairness Act of 2005 Senate Report No. 109- 14, pg. 40, February 28, 2005.

[24] S. REP. 109-14, P.L. 109-2, The Class Action Fairness Act of 2005 Senate Report No. 109-14, pg. 43, February 28, 2005, (emphasis added).

It is clear that the "primary defendant" in this case is United Pacific. Under the doctrine of Respondeat Superior, United Pacific will, in all likelihood, bear the entire burden of paying any damages should an adverse judgment be awarded. As such, Mr. Gordon will never "incur most of the loss if liability is found." As such, he is not a defendant from whom "significant relief" is sought. Accordingly, Plaintiffs have not demonstrated the application of any exception to CAFA or this Court's original jurisdiction.

## CONCLUSION

Plaintiffs have failed in their burden to demonstrate that this Court is without original jurisdiction. As such, this Court should deny Plaintiffs' attempts to divest this Court of "original jurisdiction" with the proposed amendment. In that regard, Defendants request this Court deny Plaintiffs' Motion For Leave To File Second Amended Class Action Complaint. Because original jurisdiction lies solely with this Court, and Plaintiffs cannot establish and exception to CAFA, Plaintiffs' Motion for Remand should in all things be denied as well.

WHEREFORE, Defendants respectfully request this Court deny the Plaintiffs' Motion for Leave To File Second Amended Class Action Complaint, Deny Plaintiffs' Motion to Remand, and grant Defendants all other relief which they may justly be entitled.

Respectfully Submitted,

  /s/    Sean F. Rommel          
George L. McWilliams
State Bar No. 68078
Sean F. Rommel
State Bar No. 94158
**PATTON, ROBERTS, MCWILLIAMS,
& CAPSHAW, L.L.P.**
2900 St. Michael Drive, Suite 400
Post Office Box 6128
Texarkana, Texas 75505
Telephone: (903) 334-7000
Facsimile: (903) 334-7007

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    I hereby certify that on December 5, 2005, I electronically filed the foregoing document and served the same upon all counsel of record by such electronic filing.

/s/ Sean F. Rommel          
Sean F. Rommel