**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

GLORIA BRADFORD, Individually and
as Class Representative on Behalf of All
Similarly Situated Persons; NED
BURNETT, JR., Individually and as Class
Representative on Behalf of All Similarly
Situated persons; SAMUEL
ALEXANDER, Individually and as Class
Representative on Behalf of All Similarly
Situated persons; BOOKS, ETC., by and
through GLORIA BRADFORD, Class
Representatives on Behalf of All Those
Similarly Situated; and STELLA
PATRICIA SMITH, Individually and as
Class Representative on Behalf of All
Similarly Situated persons;

PLAINTIFFS

                                        NO. 4:05-cv-4075 HFB

VS.

UNION PACIFIC RAILROAD
COMPANY,
A Delaware Corporation,

DEFENDANT.                     (Jury Trial Demanded)

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

This Court should certify this matter as a class action because it is the most

efficient procedural mechanism available for resolving a case with thousands of putative

plaintiffs who have nearly identical claims. Class certification does not constitute a

finding on the merits and simply provides an effective means of processing similar claims

to resolution. There are thousands of individuals who were harmed as a result of the

Defendant's actions, and the class representatives' claims are typical of all those within

the class.  The class representatives and proposed class counsel provide adequate

representation, and common issues of law and fact predominate.  The alternative to class

treatment is an onerous and unwieldy set of thousands of separate lawsuits that will delay

just resolution and carry the risk of disparate treatment.  Therefore, class certification is a

superior method for redress of the grievances outlined below.

## INTRODUCTION AND OVERVIEW

### A.  Factual Background

On October 15, 2005 just before 5:00 a.m., two Union Pacific trains operated by

Defendants collided just east of Hobo Jungle Park within the city limits of Texarkana,

Arkansas.  See exhibit 1, verified expert report of William Zegel, incorporated herein by

reference.  This collision resulted in a derailment  of several train cars including a tank

car filled with pressurized liquid propylene.  See exhibit 1.  Several other tank cars on the

train contained vinyl acetate and chlorine.  See exhibit 1.  The tank car containing the

propylene was severely damaged as a result of the derailment, and the pressurized

propylene gas began to escape.  See exhibit 1. Propylene is ultra-hazardous and highly

flammable.  See exhibit 1.  In fact, the lower explosive limit (LEL) for propylene two

percent in air.  See exhibit 1.  The escaping propylene migrated under pressure to the

south and east into a residential neighborhood where it encountered an ignition source,

exploded and burned,  igniting the propylene still leaking from the tank car and several

secondary fires in the area.  See exhibit 1.  Unfortunately, the initial explosion incinerated

an innocent victim in her home.  The secondary fires included creosoted timbers, a trestle

over a creek, empty boxcars, two homes, seven vehicles, and brush and trees in the area.

See exhibit 1.

On October 15, 2005, at 4:58 a.m. in the morning, just before the explosion and fires, the City of Texarkana, Emergency Management Division, received a telephone call reporting a strong chemical smell in the area near Hobo Jungle Park.  At 5:08 a.m. the City of Texarkana Emergency Management Division received a 911 report of a large explosion and fireball on the eastern edge of Hobo Jungle Park.  See exhibit 1.   See exhibit 1.  Immediately, emergency responders began to evaluate the significant potential of harm for residents within the area. See exhibit 1.  Initially, it was believed another ultra-hazardous chemical, vinyl acetate, was leaking from one of the railcars.  See exhibit 1.  Another chemical of concern was chlorine, which was contained in railcars near the burning propylene tank car.  See exhibit 1.  After evaluating the significant threat posed to the community by the collision, Texarkana officials determined that it was necessary to evacuate a geographical area within a one mile radius of the derailment site.  See exhibit 1 and illustrations thereto.  Emergency responders began knocking on doors and placing telephone calls to sleeping residents within the evacuation area forcing them out of their homes.  See exhibit 1.  Eventually, the area that was evacuated was enclosed by east 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to west 8th Street to Elm Street to the intersection of Ida Avenue on the west.  See exhibit 1 and illustrations thereto.  The evacuation zone contained approximately 276 businesses, 2,942 homes, and a population of 7,982.  See exhibit 1.

The evacuations of local residents continued throughout the day on October 15, 2005 and local businesses were closed.  At the end of the day on October 15, 2005, Texarkana Emergency Responders reduced the evacuation zone to the area immediately

surrounding the derailment site and allowed some local residents to return home.   See

exhibit 1.  However, the majority of evacuated residents remained away from their homes

until October 16, 2005.   In fact, the propylene tank car fire did not go out until about

1:00 a.m. on October 16, 2005.  See exhibit 1.

The explosion of the propylene gas and subsequent fires created large chemical

plumes that included an area of exposure beyond the boundaries of the evacuation zone.

See exhibit 1.   The burning of the propylene, homes, vehicles, structures and the creosote

wood produced smoke plumes of combustion products that included polynuclear

airomatic hydrocarbons (PAHs).  See exhibit 1.   Exposure to the PAHs within the

exposure zone posed a threat to area residents.  The plume from the fires created an area

of exposure beyond the evacuation boundaries.  See exhibit 1 and illustrations thereto.

This area of exposure was significantly affected by emissions from the fires from about

5:00 a.m. until 10:00 a.m. on October 15, 2005.  See exhibit 1.

### B.  The Geographic Boundaries of the Class

In, the Court held that here must be a rational basis and logical reason supporting

the delineation of class boundaries.  See *Diagle v. Shell Oil Co*. 133 F.R.D. 600 (D.Colo.

1990).  Plaintiffs here have met the *Diagle* test.  Plaintiffs have delineated class

boundaries as follows:  the area that was evacuated was enclosed by East 9th Street on the

north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and

Stateline Avenue to west 8th Street to Elm Street to the intersection of Ida Avenue on the

west.  See exhibit 1.  The evacuation zone contained approximately 276 businesses, 2,942

homes, and a population of 7,982.   See exhibit 1.  Plaintiffs' proposed class boundaries

are rationally based on the following: (1) the evacuation zone created by Texarkana

4

Emergency Management response officials; (2) the emergency response procedures and protocol established by the National Safety Council (NSC), the United States Environmental Protection Agency (EPA), the National Oceanic Atmospheric Administration (NOAA); and (3) the expert report of William Zegel attached hereto as exhibit 1, and incorporated herein by reference.  In fact, the area of exposure to local residents goes beyond the evacuation zone and class boundaries, and it supports the reasonableness of actions taken by emergency response officials.  Likewise, the evacuation zone, developed by implementation of a one mile radius, is logically based on an analysis of the potential evacuations zones for propylene (.48 mile radius), vinyl acetate (3.1 mile radius) and chlorine (6 mile radius).  See exhibit 1 and illustrations thereto.

Each of the Class Plaintiffs either resides, or has property interest within the class boundaries.  Each of the Class Plaintiffs has standing to represent the putative class members.  It is only those putative plaintiffs who fall within the defined classes and geographic boundaries as depicted in the illustrations attached to exhibit 1 that can make claims.

### C.  Proposed Classes and Class Representatives.

Plaintiffs move this Court for class certification pursuant to Rule 23, Federal Rules of Civil Procedure.  Plaintiffs also request certification of a general liability class of each common liability issue.  The sub-classes, as defined in the complaint for which the plaintiffs seek certification are defined below as follows.

#### 1. The economic loss class.

This class consists of all Persons on October 15, 2005 with a possessory interest in a business operation who have sustained an economic loss from the events described herein and who are located within the class boundaries identified above as below as follows: East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to west 8th Street to Elm Street to the intersection of Ida Avenue on the west.  The number of businesses located within the economic loss class is believed to be 276.  See exhibit 1.

The representative plaintiff that represents the economic loss class is Gloria Bradford of Books, Etc.  See exhibit 2.  Ms. Bradford has submitted an affidavit in support of this motion which is attached as exhibit 2, and incorporated herein by reference.  The address of Books, Etc. is 801 East Street, Texarkana, Arkansas.  See exhibit 2.  Books, Etc. is located within one mile of the Union Pacific train crash site and within the evacuation zone boundaries.

Books, Etc. could not open for business on October 15, 2005, and as a result lost income during the time period within which Books, Etc. was closed.  In fact, Ms. Bradford could not even gain access to her business, Books, Etc., until October 16, 2005.

**2.     The Property Damage Class.**

This class is identified as all persons with a possessory interest in property from October 15, 2005 within class boundaries of East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to west 8th Street to Elm Street to the intersection of Ida Avenue on the west, and who have sustained property damage that requires and or has required repair, clean-up, and/or

remediation as a result of the Union Pacific collision, explosions, and fires.  See exhibit 3.

The representative plaintiff that represents the property damage class is Samuel Alexander.   See exhibit 3.  Mr. Alexander has submitted an affidavit in support of this Motion for Class Certification which is incorporated herein and attached as exhibit 3. Mr. Alexander owns a residential structure that was located at 121 Jackson Street, Texarkana, Arkansas. See exhibit 3.  On October 15, 2005, the Union Pacific train collision caused explosions and fires which incinerated a garage and storage building located at his property.  See exhibit 3.   His property also sustained foundation, floor, and ceiling damage and surrounding vegetation was also destroyed.  See exhibit 3.  Mr. Alexander's property is located within one-half mile of the Union Pacific train crash site.

3.   **Evacuation Class.**

The Evacuation Class is defined as all persons with a possessory interest in property within the class boundaries as follows: East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to west 8th Street to Elm Street to the intersection of Ida Avenue on the west, from October 15, 2005 to present who have loss the use and enjoyment of their property as a result of the train collision, explosions and fires, and who were evacuated/forced to leave their property as a result thereof.  See exhibits 4 and 5, Affidavits of Ned Burnett and Gloria Bradford incorporated herein by reference.  Ned Burnett was located in his home at 1507 Maud Street asleep when he was suddenly forced to evacuate.  See exhibit 4.  Mr. Burnett was forced to leave his home at around 6:00 a.m. and he was not

able to return to his property until October 16, 2005.  Mr. Burnett's home is located within one mile of the Union Pacific train crash site.  See exhibit 4.

Gloria Bradford was also asleep in her residence at 307 Fairview, Texarkana, Arkansas at the time of the Union Pacific train crash.  See exhibit 5.  Ms. Bradford was forced to leave her home by emergency officials and could not return until October 16, 2005.  See exhibit 5.  Ms. Bradford's residence is located within one mile of the accident site.  See exhibit 5.

4. **Liability Class.**

Plaintiffs seek certification of all common issues of law and fact related to the liability of the defendant.  The class representative who represents this class is Stella Patricia Smith.  See exhibit 6.  Ms. Smith has executed an affidavit attached hereto as exhibit 6 and incorporated herein by reference.  Ms. Smith resides at 814 Jackson Street, Texarkana, Arkansas.  See exhibit 6.  She was at her residence in the early morning hours of October 15, 2005 when she was exposed to dangerous substances from the Union Pacific train collision.  See exhibit 6.  Ms. Smith's home is about one-half mile from the accident site.  See exhibit 6.  Ms. Smith suffered personal injuries, including respiratory distress, shortness of breath, and difficulty breathing.  See exhibit 6.  Ms. Smith represents all persons who have been exposed to dangerous substances released from the train collision, and who suffered similar personal injuries therefrom.  See exhibit 6.  The class, as so represented by Ms. Smith, includes the evacuation zone and exposure zones as depicted in the expert report of William Zegel, attached hereto as exhibit 1 and incorporated herein by reference.  See exhibit 1.

a. ***Basis for Motion***

8

The grounds for this motion are as follows:

1.                       As to each putative class, "the class is so numerous that joinder of all members is impractical", within the meaning of the Federal Rules of Civil Procedure, Rule 23.

2.                       As to each putative class, "there are questions of law or fact common to the class:, within the meaning of the Federal Rules of Civil Procedure, Rule 23.

3.                       As to each putative class, the claims or defenses of the representative parties are typical of the claims or defenses of the class", within the meaning of the Federal Rules of Civil Procedure, Rule 23.

4.                       As to each putative class, the representative parties will fairly and adequately protect the interests of the class, within the meaning of the Federal Rules of Civil Procedure, Rule 23.

5.                       Questions of law or fact are common to the members of the class and predominate over any questions affecting only individual members, within the meaning of the Federal Rules of Civil Procedure, Rule 23.

6.                       A class action is "superior" to other available methods for the fair and efficient adjudication of the controversy because there is no known interest on the part of any member of the class controlling the prosecution of the claim, within the meaning of the Federal Rules of Civil Procedure, Rule 23.

7.                       A class action is superior to other available methods for the fair and efficient adjudication of the controversy because the difficulties likely to be encountered in the management of a class action are fewer and less onerous

than the difficulties to be encountered in the prosecution of thousands of individual claims, all within the meaning of the Federal Rules of Civil Procedure, Rule 23.

## II.     LEGAL BASIS FOR CLASS CERTIFICATION UNDER RULE 23.

### A. Class Certification Is The Preferred Method Of Adjudicating Numerous Claims. .

Class actions are favored as an effective means of adjudicating numerous similar claims involving large numbers of people. See  *E.g. Kahan v. Rosenstiel,* 424 F.2d 161 (3rd Cir. 1970), *cert denied,* 398 U.S. 950 (1970).  In appropriate cases, class actions provide benefits to both claiming and defending parties and serve as a practical tool for resolving multiple claims on a consistent basis at the least cost and with the least disruption to an overloaded judicial system.

Newberg, a leading commentator on class actions, explains:  "[B]ecause Rule 23 itself requires that the court make a class determination as soon as practicable, and permits the court to alter or amend its order before the decision on the merits, many presumptions are fairly invoked to aid the court in reaching an early determination." Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class.  See *Newberg,* Newberg on Class Actions at 3-25 (1985 ed.)

Because of the extraordinarily high costs that individual plaintiffs can be expected to incur in a case of this difficulty, many claims are not viable absent the class mechanism provided in Rule 23.  Where a single harmful act, such as a train collision, may result in damages to a great many people, the class action is the appropriate procedural device for vindicating claims which, taken individually, are too small to

justify legal action, but which are of significant size if taken as a group.  See *Escott v. Barchris Contr. Co.,* 340 F.2d 731 (2d Cir. 1965), *cert denied,* 382 U.S. 816 (1965).

From the Court's prospective, the alternatives to a class action are a multiplicity of individual lawsuits.  It is likely that this type of piecemeal adjudication would produce unfair and inconsistent results.  Furthermore, denial of class certification would ensure defendants a windfall by relieving them of responsibility for the harms suffered by plaintiffs who cannot finance this type of litigation themselves.  A rejection of class certification would not only deny just compensation, but it would also defeat the purpose of civil liability in "serv[ing} as an effective deterrent to wrongdoing."  Miller, *Problems in Administering Judicial Relief in Class Actions Under Federal Rule 23(b)(3),* 54 F.R..D. 501, 513 (1971).  "It is the duty of the  . . . courts to render private enforcement practicable."  *Dolgow v. Anderson,* 43 F.R.D. 472, 484 (E.D.N.Y. 1968).  Therefore, the laudable public policy goals of class certification – efficiency and economy of litigation, avoidance of the inequality resulting from piecemeal litigation, and the need to provide access to the courts for litigants with limited resources and common claims – as embodied in Rule 23, are served by certifying this case as a class.

This case concerns one devastating event that profoundly affected the lives of an entire community.  Defendant controlled the trains, the tracks and the chemicals that were involved in this disaster.  But for Defendants' conduct, a release would not have occurred, the fatal explosions, and resulting fires would not have happened, and the Texarkana citizens residing  within the class boundaries near Defendant's rail line would be going on with their lives without their fear, traumatic memories and physical injuries. This action exists to ensure a fair remedy for the named Plaintiffs and for all class

members who suffered or were inconvenienced by Defendant's misconduct. Those who are given the privilege of profiting from handling and transporting dangerous chemicals must be held accountable when they fail to act with sufficient regard for the dangers their business creates for innocent citizens.

Plaintiffs bring this suit as a class action because the unified adjudication of liability, general causation and punitive damages will serve judicial efficiency, reduce Plaintiffs' and Defendants' costs, and ensure recovery to all victims, instead of only those who are able to bring suit. As far as the determination of individual damages is concerned, Plaintiffs believe that question is best left to individual triers of fact. As a practical matter, however, the remaining issues, including liability, general causation, business loss, property damage, evacuation damages, and punitive damages can most efficiently and fairly be adjudicated in one proceeding under Rule 23(c)(4).[1]

Plaintiffs provide a trial plan as part of their motion. That trial plan boils down to a simple and efficient bifurcated plan to use Rule 23(c)(4) to manage the hundreds of claims arising from this disaster.

- Under Rule 23(c)(4) there can be one trial for liability instead of hundreds.

- Under Rule 23(c)(4) there can be one trial as to whether Defendants' conduct caused the chemical release.

- Under Rule 23(c)(4) there can be one trial and one award of punitive damages.

- Thereafter, individual damage mediations, arbitrations, settlements or trials limited to individual causation of individual damages can commence.

The benefits to all parties and the Court in time, money, juries, expert witness costs and the avoidance of additional delay of compensation of victims will be enormous.

---

[1]     When appropriate an action may be brought or maintained as a class action with respect to particular issues or a class may be divided into subclasses and each subclass treated as a class, and the provisions of this Rule 23(c)(4) shall them be construed and applied accordingly.

## IV.        STANDARD OF CONSIDERATION

The trial court ultimately retains broad discretion in determining whether to certify a class action under Rule 23.   *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Gilbert v. City of Little Rock, Ark.*, 722 F.2d 1390, 1399 (8th Cir. 1983).   In a Rule 23 motion the substantive allegations of the Complaint must be taken as true.   Gilbert, supra. Inquiry into the merits of the case is forbidden.   *Eisen v. Carslile & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1114 (E.D. Ark. 2000).   Thus, the Court must accept as true all substantive claims in the Complaint and not consider the relative merits of the action..

## ARGUMENT

This case is ripe for class certification because it concerns a single event that profoundly affected the lives of thousands of people.   Class treatment will allow for an efficient and timely adjudication of all claims and spare class members the expense of bringing individual lawsuits.

**A.  Plaintiffs Satisfy Rule 23's Two-Step Process to Determine Whether a Class Action is Maintainable.**

First, the Court must determine whether the prerequisites of numerosity, commonality, typicality, and adequacy of representation are present.   Fed. R. Civ. P. 23(a)(1)-(4).   *Falcon*, 457 U.S. at 147.   If the four prerequisites are satisfied, the Court must decide whether one of the criteria set forth in Rule 23(b) is met.

**B.  The Elements of Rule 23(a) Have Been Satisfied.**

**1)  The Class Members are So Numerous that Joinder is Impractical.**

A class must be "so numerous that joinder is impractical."   Fed. R. Civ. P. 23(a)(1); *In re Fed. Skywalk Cases*, 680 F.2d 1175, 1178 (8th Cir. 1982); *In re Prempo*, 230

F.R.D. 555,573 (E.D. Ark. 2005).  Plaintiffs need not show that joinder would be impossible, rather they need only demonstrate that joining of all members of the class would be difficult or impracticable.  *In re Prempro*, supra.

Numerosity clearly exists in this case.  Thousands of people were evacuated, exposed to,  and injured by the collision, explosion, and fires that followed this single railroad collision.  It is indisputable that one death occurred, many people sought medical treatment and thousands were evacuated as a result of this disaster.   Additionally, businesses were disrupted and revenue was lost.  The plume cloud model submitted by Dr. Zegel (Exhibit 1) demonstrates that thousands of members of the community were evacuated and exposed to the chemicals released for a substantial period of time.  Joinder of so many people would be next to impossible and would flood the courts with claims involving almost identical evidence for years to come.  The numerosity requirement has been satisfied.  See exhibit 1.

### 2)  All Class Members Share Common Questions of Law and Fact.

All class members share common issues of liability and causation as they were all injured by the same explosions, fires and releases caused by Defendant's failure to properly control these two trains so as to avoid a rear-end collision between them.  Class members must share common questions of law *or* fact to satisfy Rule 23.  Fed. R. Civ. P. 23(a)(2).  Commonality does not require that class members hold every issue in common. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).  The rule can be met "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Becnel v. KPMG LLP*, 229 F.R.D. 592, 596 (W.D. Ark. 2005) (quoting *Paxton,* 688 F.2d

at 561).  Common questions of liability are sufficient to establish commonality.  *Becnel*, 229 F.R.D. at 596.  When "there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop."  *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).  In this case, all class members share the same common issues of Defendant's breach of its legal duties, the evacuation, and the signature injuries resulting from exposure to substances released by the collision, fires and explosions.

Commonality is satisfied in mass tort cases where class members share liability issues.  *See, e.g., Mehl v. Canadian P. Ry.*, 227 F.R.D. 505 (D.N.D. 2005) (certification granted – train derailment and chemicals released) (Dismissed on other grounds); *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) (certification granted – second hand smoke); *Watson v. Shell Oil, Co.*, 979 F.2d 1014, 1021-1022 (5th Cir. 1992) (certified class – oil refinery explosion); *Sterling v. Velsicol*, 855 F.2d 1188, 1196-1198 (6th Cir. 1988) (certified class, chemical waste – "the mere fact that questions peculiar to each individual class member remain after the common questions of defendant's liability have been resolved does not dictate the conclusion  that a class action is impermissible");  *Cook v. Rockwell Int'l. Corp.*, 151 F.R.D. 378, 384-85 (D. Col. 1993) (certified class – exposure to radioactive and conventional chemicals released from Rocky Flats weapons depot); *Self v. Illinois Cent. R.R., et al*, 1998 WL 122604 (E.D. La. 1998) (certification granted – train derailment and chemical spill).

Courts regularly certify classes in mass accidents, including train derailments.

> The major single catastrophe is the perfect situation for which the law should call upon the class action. It is a utile remedy which can well serve all parties and the courts in achieving the ultimate truth in a given difficult situation. The class action provides a simple means to redress wrongs which affect numerous individuals and it promotes judicial economy by allowing for the adjudication of numerous claims in the same action.

*Livingston Parish Police v. Illinois Cent. Gulf R.R. Co.*, 432 So. 2d 1027, 1034 (La. Ct. App. 1983) (certified class – derailment, chemical release, explosion); *see also Watson*, 979 F.2d 1014 (5th Cir. 1992) (certified class – refinery fire and explosion); *In re Ski Train Fire in Kaprun, Austria*, 220 F.R.D 195 (S.D.N.Y. 2003) (certified class – ski area train fire); *Harvey v. St. Croix Alumina, LLC, et al.*, 2000 U.S. Dist. LEXIS 13102 (D. V.I. 2000) (certified class – exposure to red bauxite at industrial facility) (Exh. 45); *Sala v. Nat'l R.R. Passenger Corp.*, 1988 U.S. Dist. LEXIS 8753 (E. D. Pa. 1988) (commonality, in passenger train derailment) (Exh. 52); *Freeman v. Celebrity Cruises*, 1994 U.S. Dist. LEXIS 17455 (S.D. N.Y. 1994) (certified class –  exposure to Legionnaire's disease) (Exh. 43); *Summons v. Missouri Pac. R.R.*, 813 S.W.2d 240 (Ark. 1991) (denial of certification is abuse of discretion – derailment and chemical spill); *In re New Orleans Train Car Leakage Fire Litig.*, 728 So. 2d 853 (La. 1999) (certification affirmed − derailment and leakage); *Self v. Illinois Cent. R.R., et al.*, 1998 U.S. Dist. LEXIS 3736 (E.D. La. 1998) (Exh. 53) (certified class – derailment and chemical spill); *Smith v. Illinois Cent. R.R.*, 20th Judicial Circuit, St. Clair County, Illinois, Case # 03-L-372, 2004-L-27 (certified class – derailment and chemical spill).  (Exh. 54.)  As with other derailments, the class members in this action all share the same issue of Defendants' liability for exposure to substances released.   This issue is more than sufficient to establish commonality.

### 3)  Plaintiffs' Claims are Typical of the Classes.

The Rule 23(a) typicality requirement is satisfied when the claims of named plaintiffs emanate from the same or similar legal theory as the claims of the class members.  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996); *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995); *Potash,* 159 F.R.D. at 690.  The typicality inquiry purposes "to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3rd Cir. 1998).  When the same conduct affects the named plaintiffs and the class, the typicality requirement is usually met regardless of varying fact patterns which underlie individual claims.  *Potash*, 159 F.R.D. at 690.  "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).  Plaintiffs need only demonstrate that there are other members of the class who have similar grievances.  *Donaldson v. Pillsbury Co.,* 554 F. 2d 825, 830 (8th Cir. 1977); *In re St. Jude Medical Inc., Silzone Heart Valve Products Liab. Litig.*, 2003 U.S. Dist. LEXIS 5188 (D. Minn. 2003) (*St. Jude I*); *Coleman v. Block,* 562 F. Supp. 1353, 1357 (D.N.D. 1983).  If the similarity of legal theories is strong, a plaintiff's claims will be viewed as typical of class members' claims despite "substantial factual differences." *Lockwood,* 162 F.R.D. at 575.

Here, all Plaintiffs and class members not only shared the same morning of terror, they share the same theories of recovery.  Defendant, through its actions and inactions, is liable for all class member injuries, regardless of the issues surrounding individual members' exposure.  Defendant was responsible for the derailment, and Defendant was

responsible for the explosions, fires and exposures.  Therefore, Plaintiffs' pursuit of their own goals will work to benefit the entire class.  This is the hallmark of typicality.

### 4)  Adequacy of Representation

Under Rule 23(a)(4) the representative parties must fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a) (4).  To fulfill the requirement, two factors must be satisfied.  First, the representatives' attorney must be qualified, experienced, and generally able to conduct the litigation.  *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 493 (D.C. Ark. 1984); *Leach v. Standard Register Co.*, 94 F.R.D. 621 (W.D. Ark. 1982).  Second, the suit must not be collusive and plaintiffs' interests may not be antagonistic to the class.  *Gentry*, 102 F.R.D. at 494.  The burden is on the defendants to demonstrate that representation would be inadequate.  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986), *reh'g denied, en banc,* 785 F.2d 1034 (5th Cir. 1986).

The Class Representatives will adequately represent the class in this action because they have no relationship with Defendant except as claimants in this case.  They have no interests antagonistic to the interests of the class and will, through their counsel, vigorously and capably press the claims of the class.   See exhibits 2 through 6.  Plaintiffs' counsel has extensive experience litigating and trying, class actions.  As both elements of the requirement are met, Plaintiffs and their counsel can, and will, adequately represent the class.

### C.  The Classes Satisfy the Requirements of Rule 23(b).

All class members share similar injuries inflicted as a result of a single event and the ensuing chain of foreseeable consequences manifested within the same geographic area.  At the root of each class member's claim lies  Defendant's conduct in operating its

18

railroad so as to cause this collision.   In addition, as all class members share similar injuries caused by one event, the sub-classes all meet the requirements of Rule 23(b).   A class action is the superior method for resolving class members' claims.

Certification of a class under Rule 23(b)(3) requires two findings: 1) that common questions of law or fact predominate, and 2) that a class action is superior to other methods available for fair and efficient adjudication.   Fed.R.Civ.P. 23(b) (3).   Plaintiffs' proposed class and sub-classes satisfy both the predominance and the superiority criteria.

Plaintiffs' common questions concerning Defendant's liability, punitive damages, general causation, and exposure to both burning propylene and subsequent fires are sufficient to satisfy the predominance test.   While there is "no bright line for determining whether common questions predominate," "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves ***an element*** on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."   *Lockwood Motors,* 162 F.R.D. at 580 (emphasis added).   Common questions need only predominate; they need not be exclusive or, necessarily, dispositive.   *Potash,* 159 F.R.D. 693.   "As with the commonality and typicality requirements, the predominance inquiry is directed towards the issue of liability."   *In re Select Comfort Sec. Litig.,* 202 F.R.D. 598, 610 (D. Minn. 2001).   In this case, questions concerning responsibility and liability for causing these trains to collide; causation regarding the ruptured rail car; what chemicals were released; and the appropriateness and amount of punitive damages are all common and are the predominate issues in the case.

Differences in individual damages occur in every case and do not stand as a basis to deny certification. *Id.* at 610. ("[C]ourts frequently grant class certification despite individual differences in class members' damages.") Common issues must constitute a significant part of individual cases, but they need not encompass plaintiffs' entire cases. *Jenkins*, 782 F.2d at 472; *Evans v. Am. Credit Sys.,* 2004 U.S. Dist. LEXIS 10634, *22-*23 (D. Neb. 2004). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).

While some mass tort cases do not survive class scrutiny because they allege differing injuries occurring over time and space (e.g. tobacco, asbestos, and water contamination), mass disasters occurring at one time, in one location are ideal for class treatment because individual differences, except as the to the quantum of damages, are nearly eliminated. "Mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." *Amchem Products,* 521 U.S. at 624. When presented with mass disasters Courts have generally found that common issues predominate. *See, e.g., Cook v. Rockwell Int'l.,* 151 F.R.D. 371; *Freeman v. Celebrity Cruises, Inc.*, 1994 U.S. Dist. LEXIS 17455; *In re New Orleans Train Car Leakage Fire Litig.*, 728 So. 2d 853; *Daniels v. Witco Corp.*, 2004 La. App. LEXIS 1438, *18-*19 (La. Ct. App. 2004) (overruling certification denial – explosion and chemical release); *Reynolds v. CSX Transp., Inc.*, 55 Ohio App. 3d 19 (Ohio Ct. App. 1989) (certification approved – derailment and explosion); *Smith, supra,* (certification approved – derailment and chemical leak);  *Gilley, et al. v. Kansas Gas*

*Serv. Co.*, Dist. Ct. Reno County Kansas, Case No. 01 C 157 (2002) (certification approved – underground gas leak and explosion).

Here, common issues predominate because the class members will all prove the same facts to establish Defendants' liability for their injuries. If they fail to prove liability, all of their claims will fail. If Defendant's acts were unlawful, they were unlawful as to every class member whether physically injured, emotionally harmed or evacuated. When common issues of liability are pivotal, they predominate. *Mullen*, 186 F.3d at 626. When each claim requires the same proofs of Defendant's liability and common liability issues are pivotal to recovery, common issues predominate. *Id.*

In this case, common issues predominate because all class members suffered in the same way, including signature injuries resulting from exposure to the same cloud of smoke and chemicals at the same time, in the same geographical area. When claims share the same cause in a limited area, predominance is satisfied. *See Cook*, 151 F.R.D. at 387-89. Not only do the class members share the same cause of injuries, they share the same types of injuries. The geographical scope of the class is limited and easily defined through Plaintiff's expert report. See exhibit 1. Thus common issues not only predominate, but with the exception of damages, they are the only issues. All class members share the same liability, causation, exposure and punitive damage issues. Because these common liability issues are <u>dispositive</u>, they automatically predominate over individual questions, like individual damages.

### D. Class Adjudication is Superior to Other Available Methods of Adjudication.

A party seeking class certification pursuant to Rule 23(b)(3) must also show "that a class action is superior to other available methods for the fair and efficient adjudication

of the controversy." This requirement is readily met here. A single class action is undoubtedly superior to thousands of individual actions, with their increased expense, duplication of discovery, endless duplication of expert testimony and potential for inconsistent results. Even if damage issues were adjudicated individually, the efficiencies gained by use of a class action for the common questions that can be tried commonly will ultimately benefit all of the class members, and Defendant, by dramatically reducing litigation expenses and the administrative burden upon this Court. No reason exists to repeatedly litigate Defendant's course of conduct *ad infinitum*. *See, e.g., Jenkins,* 782 F.2d at 473 ("Judge Parker's plan is clearly superior to the alternative of repeating, hundreds of times over the litigation of the [same issue]…, with, as the experienced judge says, 'days of the same witnesses, exhibits and issues from trial to trial.'").

A single adjudication of liability is superior even in suits containing individual damages issues. When presented with a class action involving chemical land contamination and personal injuries Judge Posner found common questions were best addressed on a class wide basis. *Mejdrech,* 319 F. 3d at 912. As in *Mejdrech,* class treatment is superior here, because a single adjudication can efficiently decide common questions of causation, liability, and punitive damages at huge savings in time and cost, while still reserving damages for individual adjudication.

Class treatment is superior because it will make resolution of this case manageable for the Court and the parties. Adjudication of common issues will also simplify the award of damages because it will create an accurate model of the duration, geographical location, and concentration of exposure that followed this disaster. With

that model, legitimate claims for personal injury can be easily distinguished from the claims of those not exposed.

In a later section of this memorandum, Plaintiffs present a workable trial plan that presents an efficient way to manage these claims.  These plans are clearly superior to expensive, repetitive adjudication of individual claims.  Thus, the class mechanism is superior.

### E.  Arkansas Law Supports Class Certification in Railroad Disaster Cases

The Arkansas Supreme Court has long recognized that cases involving railroad crashes that result in mass evacuations and tort claims should be resolved as class actions. In *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W. 2d 240 (1991) the Arkansas Supreme Court reversed a Circuit Court's denial of class certification in a case involving a derailed chemical tank car and an ensuing mass evacuation.

The *Summons* court concluded that a class similar to the class at issue in this case satisfied the numerosity requirement.  Id. at 120.  The Court also concluded that there were common questions:

> The predominant questions, however, in any case will be factual.  The defendant's actions will have to be determined, and then it will have to be determined whether those actions were wrongful and to what degree.  We have no hesitancy in saying there are common questions.
> Id. at 120-121.

The mere fact of varying injuries, and the fact that the class representatives' injuries might differ from the injuries of others did not preclude a finding of typicality, because: "their claims are typical in the sense that they arise from the alleged wrong allegedly done to them, and that is sufficient".  Id. at 121.

In *Summons* the Defendant argued that predominance could not be found because of individual causation and damage issues. The Court first noted that in a derailment/chemical release case, predominance of commonality with respect to the liability issues "would undoubtedly be established." Id. at 122. While liability might depend upon several theories, each of those theories would necessarily apply to each class claim, making those liability claims predominant. Id. at 123.

Using a practical approach to case management, the Court reversed and remanded, concluding that "[t]he repeated litigation of the liability question and the attendant possibilities of inconsistent results in a case like this one outweigh the admitted fact that each claimant will have different damages evidence". Id at 124.

*Summons* could not be more squarely on point with this case, and this motion. Arkansas, as a matter of law and policy, has recognized in *Summons* that rail disasters in this state that impact the lives of thousands of people present excellent opportunities to achieve judicial economy in the resolution of those claims by utilizing the case management tools embodied in Rule 23 class treatment. There is no reason to deviate from the practical case management blueprint that *Summons* provides.

## IV. TRIAL PLAN

While "manageability" and "superiority" often become mere buzzwords in the context of a motion for class certification, Plaintiffs' Trial Plan demonstrates not only that a mass accident case such as this ***can*** be tried as a class, but also that it ***should*** be tried as a class. Rule 23 gives the Court the flexibility to create a trial plan that works when it is faced with a class action. As Judge Posner recently wrote, the class

mechanism "allows district courts to devise imaginative solutions to problems created by the presence in class action litigation of individual damages issues." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).

Plaintiffs' propose to divide the trial process into a centralized liability, punitive damages and general causation trial to determine Defendants' culpability and liability for the collision and chemical release, and the appropriateness of total amount of punitive damages. At the time of certification or after liability has been determined, the parties and the Court can determine an appropriate method for adjudicating damages for individual class members.  Possible methods include individual damages trials with adjudications of individual causation, mini trials with manageable groups of plaintiffs, summary jury trials, special master evaluation and recommendations, and scientific surveys of the class members' damages.

Dividing liability and damages phases of the trial is an acceptable remedy to the problem of individualized damages.  Carnegie, 376 F.3d at 661; Allen v. Int'l Truck & Engine Corp., 358 F.3d 469, 471-72 (7th Cir. 2004); In re Visa Check/MasterMoney Antitrust Litig. v. Visa, USA Inc., 280 F.3d 124, 141 (2d Cir. 2001).  The efficiencies gained through single adjudication of all liability issues should not be discounted.

## V.    CONCLUSION

This case is relatively simple.   It concerns a captive population that was unwillingly and without warning exposed to dangerous substances released as a result of Defendant's negligence.  Plaintiffs have been forced to pay for Defendant's recklessness. Defendant caused the collision, explosions, fire and chemicals release.   The class mechanism is the only means of ensuring these victims just compensation.   Individual

adjudication of class members' claims would deny the injured justice through undue delay.  Class certification should be granted because it will ensure that *all* victims receive just compensation and, in the form of exemplary damages, punish Defendants for their wrongdoing.  Class certification is both necessary and just.

Respectfully Submitted,


DUNN, NUTTER & MORGAN, L.L.P.
Suite 6, State Line Plaza, Box 8030
Texarkana, Arkansas 71854-5945
Telephone:  870-773-5651
Telecopier:  870-772-2037
Email: rgnutter@dnmlawfirm.com

BELLOVIN & KARNAS, P.C.
131 East Broadway Boulevard
Tucson, Arizona 85704
Telephone: 520-571-9700
Telecopier: 520-571-8556


By:_____M. David Karnas_____
            M. David Karnas
            Arizona Bar No. 013728
            ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

       I, M. David Karnas, attorney for Plaintiffs, hereby certify that on the __30th__ day of _____June_____, 2006, I electronically filed the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following attorneys:

       Attorneys for Defendants:

       George L. McWilliams
       Sean F. Rommel
       Patton Roberts McWilliams & Capshaw
       Century Plaza, Suite 400
       2900 St. Michael Drive
       Texarkana, TX  75503

                   _____M. David Karnas_____

                   M. David Karnas