IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GLORIA BRADFORD, Individually                                                           PLAINTIFFS
and as Class Representative on
Behalf of All Similarly Situated
Persons; NED BURNETT, JR.,
Individually and as Class Representative
on Behalf of All Similarly Situated
Persons; SAMUEL ALEXANDER,
Individually and as Class Representative
on Behalf of All Similarly Situated
Persons; BOOKS ETC., by and through
GLORIA BRADFORD, Class
Representative on Behalf of All Those
Similarly Situated; and STELLA
PATRICIA SMITH, Individually and as
Class Representative on Behalf of All
Similarly Situated Persons

VS.                                           CASE NO. 05-CV-4075

UNION PACIFIC RAILROAD
COMPANY                                                                                  DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss Plaintiffs' Fourth Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), filed on behalf of Defendant Union Pacific Railroad Company ("Union Pacific"). (Doc. 48). Union Pacific seeks dismissal of Plaintiffs' claims *en toto* based on preemption by federal regulations. Plaintiffs have responded. (Doc. 67). Union Pacific has replied to Plaintiffs' response. (Doc. 71). The Court held a hearing on the Motion to Dismiss on January 5, 2007. (Doc. 98). The matter is ripe for consideration.

### I. BACKGROUND

Just before 5:00 a.m., October 15, 2005, two Union Pacific trains collided just east of Hobo Jungle Park, within the city limits of Texarkana, Arkansas. The collision resulted in the derailment

of several train cars, including a tank car filled with pressurized liquid propylene. Other tank cars involved in the derailment contained vinyl acetate and chlorine. The tank car containing propylene was severely damaged as a result of the derailment, and pressurized propylene gas began to escape. The escaping propylene migrated under pressure to the south and east of the derailment site into a residential neighborhood where it encountered an ignition source. Upon ignition, the vapor trail turned into a fireball that followed in reverse its originating path from the residential neighborhood to the propylene tank car, which, in turn, exploded, burned and caused additional devastating fires. Either the explosion or the resulting fires damaged three houses, seven vehicles, a semi-tractor trailer, and a trailer. Sadly, the initial explosion incinerated one victim in her home. Local emergency personnel were forced to evacuate a number of residents living near the derailment.

Within days of the derailment, Plaintiffs filed the instant lawsuit against Union Pacific in Miller County Circuit Court, alleging nuisance, trespass, negligence, negligence *per se* and strict liability causes of action. Union Pacific removed the case to this Court on October 26, 2005. (Doc. 1). In the Motion to Dismiss, Union Pacific argues that the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq., and the Hazardous Material Transportation Act ("HMTA"), 49 U.S.C. § 5101, *et seq.*, and regulations promulgated thereunder preempt the whole of Plaintiffs' claims.

## II. MOTION TO DISMISS STANDARD

In reviewing Union Pacific's Motion to Dismiss, the Court assumes as true all factual allegations of the complaint. *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 914 (8th Cir. 2001). "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *DuBois v. Ford Motor Credit Co.,* 276 F.3d 1019, 1022 (8th Cir. 2002). "In appraising the sufficiency of the complaint we follow, of

course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, this Court will dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III. FEDERAL PREEMPTION DOCTRINE

Union Pacific seeks dismissal based on alleged federal preemption of Plaintiffs' claims. Federal preemption derives from the Supremacy Clause of the United States Constitution. The Supremacy Clause provides that the laws of the United States "shall be the supreme law of the land." U.S. Const. Art VI, cl. 2. It is well-established that Congress possesses the power to preempt state law. A federal agency acting within the scope of its congressionally delegated authority may also preempt state law. *Louisiana Pub. Serv. Comm. v. Fed. Communication Comm.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).

Congress enacted the FRSA in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101; *Norfolk So. Ry. Co. v. Shanklin,* 529 U.S. 344, 347, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). The FRSA gives the Secretary of Transportation broad powers to prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety. 49 U.S.C. § 20103(a); *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The Secretary delegated the authority to "[c]arry out the functions vested in the Secretary by the [FRSA]" to the Federal Railroad Administration ("FRA"). *Mehl v. Canadian Pacific Ry., Ltd*., 417 F.Supp.2d 1104, 1108 (D. N.D.

2006). The FRSA includes an express savings and preemption clause:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106 (2005). The United States Supreme Court has held that state common law falls within the scope of the broad category of "law, rule, regulation, order, or standard relating to railroad safety." *Easterwood,* 507 U.S. at 664.

When a federal statute contains an express preemption clause, as does the FRSA, the Court must focus on the plain wording of the clause, which contains the best evidence of the scope of Congress' preemptive intent. *Easterwood,* 507 U.S. at 664. Courts have been faced with interpreting the preemptive force of the Federal Railroad Safety Act on numerous occasions. "The language of the FRSA's preemption provision dictates that, to preempt state law, the federal regulation must 'cover' the same subject matter, and not merely 'touch upon' or 'relate to that subject matter.'" *Shanklin,* 529 U.S. at 351. To prevail on the claim that the regulations have preemptive effect, Union Pacific must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law. *Easterwood,* 507 U.S. at 664. Allow the Court to be perfectly clear on this point: the determination of whether state law is preempted by federal law does not concern an examination of the compliance with or the adequacy of the federal regulation. *See Shanklin,* 529 U.S. at 357-58; *see also CSX Trans., Inc. v. Williams*, 406 F.3d 667, 672 (D.C. Cir. 2005); *Kalan Enter. L.L.C. v. BNSF Ry. Co.,* 415 F.Supp.2d 977, 980-

81 (D.Minn. 2006); *Ouellette v. Union Tank Car Co.,* 902 F.Supp. 5, 10 (D.Mass.1995) (finding the FRSA's preemption language does not differentiate between instances of compliance and non-compliance). Nor does it involve an inquiry into the purpose of the regulation. *Easterwood,* 507 U.S. at 675. Once a regulation substantially subsumes the subject matter of the state law claim, neither "reluctance" nor "considerable solicitude for state law" apply. The subject matter of plaintiff's cause of action is either preempted or it is not. *See Easterwood*, 507 U.S. at 664-65; *Rayner v. Smirl*, 873 F.2d 60, 66 (4th Cir. 1989). This is the case even where factual disputes exist. *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005).

Courts have held that several provisions of the FRSA preempt state law. *See e.g., Shanklin,* 529 U.S. at 347 (holding that 49 C.F.R. §§ 646.214(b)(3) and (4) covered the subject matter of the adequacy of warning devices installed with the participation of federal funds); *Easterwood,* 507 U.S. at 676 (holding that 49 C.F.R. § 213.9 covered the subject matter of claims alleging excessive speed); *Ouellette,* 902 F.Supp. at 10 (finding that 49 C.F.R. § 231.7 covered the subject matter of claims relating to the design and placement of handrails on tank cars leaving no room for a private action based upon state law theories); *Lundeen v. Canadian Pacific Railway Co.*, 447 F.3d 606, 613 (8th Cir. 2006)(finding negligent inspection claim preempted by, *inter alia*, 49 C.F.R. §§ 213.223(b), 213.233(a)-(c), 213.237(a)-(c), 212.203, 212.101(b)(1)).

On occasion, state courts have found that FRSA regulations did not preempt state-law tort claims. *See e.g., Hightower v. Kansas City So. Ry. Co.,* 70 P.3d 835, 841 n. 10 (Okla.2003) (declining to overturn a jury verdict on an excessive vegetation claim because of the railroad's failure to object to the claim, but noting that other jurisdictions had held that federal law preempts common law tort claims predicated on a railroad's failure to control vegetation adjacent to railroad crossings

so long as the railroad complies with the federal vegetation regulation (49 C.F.R. § 213.37(b))); *Clark v. Illinois Central R.R. Co.,* 794 So.2d 191, 196 (Miss.2001) (holding an obstructed view claim (excessive vegetation) was not preempted by the FRSA's regulations regarding warning devices at railroad crossings); *In re Miamisburg Train Derailment Litig.,* 1994-Ohio-490, 68 Ohio St.3d 255, 626 N.E.2d 85 (1994) (holding the FRSA did not preempt a claim for negligent operation (failure to use reinforcing brake pads) because the regulation was adopted after the manufacture of the railroad car in question). In addition, several courts have held that the FRSA does not create a private right of action to obtain damages for noncompliance with or a violation of the federal regulations. *Ouellette v. Union Tank Car Co.,* 902 F.Supp. 5, 11 (D.Mass.1995); *Allende v. Soo Line R.R. Co.,* Civ. No. 03-3093 (D.Minn. Jan. 29, 2004) (Magistrate Judge Janie S. Mayeron's Report and Recommendation at pp. 15-16, n. 5, finding that the FRSA does not create a private cause of action on behalf of third parties injured by a railroad's alleged violation of the safety rules and regulations promulgated pursuant to the FRSA).

  The Eighth Circuit has also addressed excessive speed claims and held that an excessive speed claim was preempted when the speed of the train in question was above the railroad's self-imposed speed limit and below the FRSA's speed limit. *St. Louis Sw. Ry. Co. v. Pierce,* 68 F.3d 276, 278 (8th Cir. 1995). Most recently, and particularly relevant to the case before the Court, the Eighth Circuit held that negligent inspection claims are preempted by the FRSA's regulations. *In re Derailment Cases,* 416 F.3d at 794 ("*Scottsbluff*"). The *Scottsbluff* case stemmed from a derailment in Scottsbluff, Nebraska, on November 4, 2000. Eighteen cars from an 84-car freight train derailed and leaked benzene and other hazardous chemicals into the air and ground. Approximately 1,100 Scottsbluff residents were evacuated. An investigation into the derailment concluded that the

accident was the result of a problem between the coupler that connected two of the railroad cars. It was undisputed that the federally-mandated inspections occurred two days prior to the derailment. The plaintiffs in the *Scottsbluff* case filed suit alleging negligence, negligence per se, and strict liability. The district court granted summary judgment finding that the negligence claims were preempted by the FRSA and that the negligence per se and strict liability claims were not recognized by Nebraska law. The Eighth Circuit affirmed the summary judgment ruling.

In *Scottsbluff*, the Eighth Circuit began its preemption analysis by looking "to the extent to which the regulations adopted pursuant to the FRSA address freight car inspections." 416 F.3d at 793. The Eighth Circuit noted that the FRSA has adopted regulations that required: (1) inspection of freight cars at each location where they are placed in a train; (2) designation of inspectors that have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance; and (3) a railroad may not place or continue in service a car that, among other things, has a defective coupler or a defective draft key retainer assembly. *Id.* citing 49 C.F.R. §§ 215.13, 215.11, 215.123, 215.127. The *Scottsbluff* plaintiffs argued that their negligent inspection claims were not preempted because the federal regulations did not specify the manner in which freight car inspections must be accomplished. The Eighth Circuit disagreed:

> [A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter. *Cf. CSX Transp. Inc. v. Williams*, 406 F.3d 667, 672 (D.C.Cir.2005) ("The FRSA preemption provision ... authorized the court *only* to determine whether the regulation covers the subject matter, leaving it to [the federal agency] to gauge the efficacy of the ... measures based on the agency's expertise."). It is clear that the FRA's regulations are intended to prevent negligent inspection by setting forth minimum qualifications for inspectors, specifying certain aspects of freight cars that must be inspected, providing agency monitoring of the inspectors, and establishing a civil enforcement regime. These intentions are buttressed by the FRA's inspection manual for federal and state inspectors. ... Accordingly, we conclude that Plaintiffs' inspection claims are

preempted by the FRA's regulations.

416 F.3d at 794 (internal footnotes omitted).

## IV. DISCUSSION

As previously noted, Union Pacific seeks dismissal of Plaintiffs' claims *en toto* based on federal preemption. With the preceding legal framework in mind, the Court turns to the merits of Union Pacific's motion.

### a. Plaintiffs' Negligent Operation Claims

Union Pacific argues that 49 C.F.R. § 218.35(b) covers and preempts Plaintiffs' negligent operation claims. The Court disagrees. Union Pacific is correct in arguing that *Scottsbluff* is controlling on this subject. However, this case is distinguishable from *Scottsbluff* in several important respects. In *Scottsbluff*, the Eighth Circuit found negligent safety inspection claims preempted because a regulatory framework of sufficient weight and breadth existed, which displaced private regulation through civil lawsuits. The federal regulations at issue in *Scottsbluff* did more than merely "touch upon" the subject matter of negligent inspections. *Easterwood,* 507 U.S. at 664; *Scottsbluff*, 416 F.3d at 794. Indeed, federal regulations covering railroad inspections require: (1) inspection of freight cars at each location where they are placed in a train; (2) designation of inspectors that have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance; and (3) that a railroad may not place or continue in service a car that, among other things, has a defective coupler or a defective draft key retainer assembly. *Id.* (*citing* 49 C.F.R. §§ 215.13, 215.11, 215.123, 215.127). Inspection regulations also provide for agency monitoring of the inspectors and establish a civil enforcement regime. 416 F.3d at 794. In the case at hand,

Union Pacific argues that a single sentence found in § 218.35 substantially subsumes the entire gamut of negligent operation claims. 49 C.F.R. § 218.35(b) provides:

> (2) Trains and engines, except designated class trains, within yard limits must move prepared to stop within one half the range of vision but not exceeding 20 m.p.h. unless the main track is known to be clear by block signal indications.

49 C.F.R. § 218.35(b)(2). The Court is not persuaded that this scant regulation provides a level of safety and security on par with that in *Scottsbluff*. The Court is fully aware that "bureaucratic micromanagement" is not required for a regulation to substantially subsume a private cause of action. 416 F.3d at 794. However, a *Scottsbluff*-equivalent series of regulations covering the subject matter of negligent operation is simply not before the Court. Section 218.35(b) merely touches upon the subject matter of negligent operations without substantially subsuming the same. Put another way, in the arena of railroad safety inspections, regulations on the books substantially subsumed the subject matter of the *Scottsbluff* plaintiffs' negligent inspection claims. The same cannot be said for a private cause of action based on negligent operation–akin to a failure to maintain a proper lookout in car collision cases–which is the heart of Plaintiffs' claims in this case. Thus, the Court finds and holds that the subject matter of negligent operation has not been substantially subsumed by regulations enacted pursuant to FRSA.

Section 218.35 fails to preempt Plaintiffs' claims of negligence in this case for another reason–the regulation does not seek to protect those in the place of Plaintiffs. 49 C.F.R. § 218.35, entitled "Yard Limits," falls underneath the subheading "Protection of Trains and Locomotives." Section 218.31, "Scope," outlines the scope, as the title suggests, of the safety regulations in the subpart that follow–which include § 218.35. The complete text of § 218.31 reads as follows: "[t]his subpart prescribes minimum operating rule requirements *for the protection of railroad employees*

engaged in the operation of trains, locomotives and other rolling equipment." 49 C.F.R. § 218.31 (emphasis added). Plaintiffs are not railroad employees; nor do they seek redress for injuries suffered by railroad employees. The Court simply does not believe that a series of federal regulations aimed at protecting trains, locomotives and railroad employees "covers" or "substantially subsumes" the subject matter of Plaintiffs' claims in this case. Indeed, Union Pacific admits–as it must–that "not every regulation will preclude every state law claim." (Doc. 71, pg. 10). To find preemption, a court must determine that proper alignment exists between the subject matter of plaintiffs' claims and the federal regulation at issue. In this case, the Court finds a failure of the cited regulation, 49 C.F.R. § 218.35 to align with and substantially subsume the subject matter of Plaintiffs' negligent operation claims.

b. Plaintiffs' Crew Fatigue Claims

Plaintiffs allege, in paragraph 27 of their Complaint, that Union Pacific failed to "monitor the safe operation of its rail cars by [workers] who were subject to fatigue." Union Pacific argues that this fatigue claim is preempted by federal law, citing 49 U.S.C. § 21101 (covering limitations on duty hours of train employees); 49 U.S.C. § 21104 (signal employees); 49 U.S.C. § 21105 (dispatching service employees); 49 C.F.R. § 228.7; § 228.11; § 228.19; § 228.21. Upon review, the Court finds that the cited regulations prescribe *reporting requirements* for hours worked by railroad employees. The cited regulations also prescribe civil and criminal penalties for an employer's failure to keep records in accordance with the standards set forth in the regulations. Crew fatigue, as an element of negligence, is not covered, nor substantially subsumed by these regulations.

c. Plaintiffs' Remaining Claims

Plaintiffs allege a variety of other negligence claims against Union Pacific, and the Court now turns to those claims which it has not yet addressed. To the extent Plaintiffs state claims for negligent inspection, those claims are preempted. 49 C.F.R. § 215.11; *Scottsbluff*, 416 F.3d at 794. Plaintiffs' claims regarding engineer training and certification are also preempted. 49 C.F.R. § 240. Also preempted are claims involving train design and integrity. 49 C.F.R. § 231. To the extent Plaintiffs state claims involving the speed, by itself, of Union Pacific's trains, those claims are preempted. 49 C.F.R. § 213.9(a); *Easterwood*, 507 U.S. at 675. However, the Court finds unpersuasive Union Pacific's argument that Plaintiffs cannot recover damages because only the Secretary of Transportation has the authority to impose civil penalties for violations of a railroad safety regulation. (Doc. 49, pgs. 19-22). As detailed in this memorandum, Plaintiffs' negligent operation and crew fatigue claims are not covered by a federal regulation, and Plaintiffs are not suing Union Pacific for violating federal regulations that do not cover their claims.

d. Plaintiffs' HMTA Claims

Plaintiffs allege that Union Pacific was negligent in the manner in which it stored, handled and transported hazardous materials. The HMTA has addressed hazardous material storage, handling and transportation. FRSA preemption analysis applies to the HMTA "as it relates to the transportation of hazardous materials by rail." *CSX Transp., Inc. v. Pub. Util. Com'n of Ohio*, 910 F.2d 497, 501 (6th Cir. 1990)(finding that Congress intended for the preemption provisions of FRSA to apply to hazardous material regulations adopted under HMTA applicable to the railroads). Stated differently, because FRSA preemption refers to acts "by the Secretary," a regulation affecting

11

railroad safety promulgated pursuant to the HMTA takes FRSA's preemptive effect. *Missouri Pacific Railroad Co. v. Railroad Com'n of Texas*, 671 F.Supp. 466, 471 (W.D. Tex. 1987), aff'd 850 F.2d 264 (5th Cir. 1988). The secretary has enacted 49 C.F.R. §§ 171-80 to deal with the handling, storage and transportation of hazardous materials. The Court agrees with Union Pacific that Plaintiffs' claims regarding hazardous materials are covered and preempted by HMTA regulations.

## V. CONCLUSION

For the reasons cited herein and above, Plaintiffs' negligent operation and crew fatigue claims, as pled, are not "covered" by federal regulations promulgated pursuant to the FRSA and the HMTA. As such, Plaintiffs' negligent operation and crew fatigue claims are not preempted, and the Motion to Dismiss as to them fails. Plaintiffs' negligent inspection, speed, engineer training and certification, and train design and safety claims, as well as all claims relating to hazardous materials are preempted. Accordingly, Union Pacific's Motion to Dismiss Fourth Amended Complaint should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 7th day of June, 2007.

    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge