IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

GLORIA BRADFORD, Individually and
as Class Representative on Behalf of All
Similarly Situated Persons; NED BURNETT,
JR., Individually and as Class Representative
on Behalf of All Similarly Situated Persons;
SAMUEL ALEXANDER, Individually and
as Class Representative on Behalf of All
Similarly Persons; BOOKS, ETC., by and
through GLORIA BRADFORD, Class
Representative on Behalf of All Those
Similarly Situated; and STELLA SMITH,
Individually and as Class Representative
on Behalf of All Similarly Situated Persons                                    PLAINTIFFS


VS.                              CASE NO. 05-CV-4075


UNION PACIFIC RAILROAD COMPANY,
A Delaware Corporation                                              DEFENDANT


## MEMORANDUM OPINION

This is a case arising out of a train derailment that occurred in Texarkana, Arkansas, on

the morning of October 15, 2005.   The named Plaintiffs bring this action seeking redress for

personal injuries, economic losses, property damage and evacuation expenses for themselves and

all others similarly situated.  The matter is now before the Court on Plaintiffs' Motion for Class

Certification.  (Doc. No. 56).  The Defendant has responded.  (Doc. No. 75).  The Plaintiffs filed

a reply to Defendant's response.  (Doc. No. 88).  The Defendant filed a response to Plaintiffs'

reply.  (Doc. No. 91).  On January 4, 2007, the Court held a hearing on the motion.  After the

hearing, each party submitted Proposed Findings of Fact and Conclusions of Law to the Court.

(Doc. Nos. 105 and 106).  The matter is ripe for consideration.

BACKGROUND

On October 15, 2005, just before 5:00 a.m., two Union Pacific freight trains collided in the Union Pacific railyard located just east of Hobo Jungle Park in the city of Texarkana, Arkansas.  The collision resulted in the derailment of several railroad cars including a tank car filled with propylene, a compressed flammable gas.  The tank car containing the propylene was damaged in the accident and the pressurized gas began to escape.  The escaping gas migrated into a nearby residential neighborhood where it encountered an ignition source in a nearby house.  The house exploded and the resident was killed.  The fire moved quickly back along the flowing gas to the punctured tank car igniting the remaining propylene that was leaking from the car.  Several secondary fires started.  These fires burned a wooden railroad trestle, some empty boxcars, seven vehicles, two residential structures, and brush and trees in the area.  The explosion and subsequent fires created a large black smoke plume that went straight up in the air, and then migrated slightly to the south, southwest throughout the day.

At 4:58 a.m., the City of Texarkana's Emergency Management Division received its first 911 telephone call reporting a possible derailment and a chemical smell near Hobo Jungle Park.  At 5:08 a.m., Union Pacific's yardmaster called 911 and reported a large explosion and fire in the railyard.  The yardmaster suggested to the dispatcher that residents within a one mile radius of the railyard be evacuated.  At 5:30 a.m., emergency officials ordered an evacuation of a one mile radius.  Residents within this area were notified to evacuate by telephone and/or door-to door visits.  At 8:30 a.m., responders were ordered to cease further evacuations and to secure the area evacuated to that point.  At 2:10 p.m., the evacuation zone was reduce to the three blocks south

2

and west of the incident.  Residents outside this three block area were allowed to return to their homes.  At approximately 12:00 a.m. on October 16, 2005, the evacuation order was lifted completely.

Emergency officials established two evacuation centers to house evacuees from the area.  One was located at the Southwest Center and the other was located at the Four States Fairground.  Approximately 250-350 people went to these evacuation centers.  None of the evacuees at either of these sites required medical assistance.  The local hospitals reported that two or three persons came in with complaints but none showed any visible symptoms.  These individuals were treated and released.

On October 16, 2005, the day after the incident, Union Pacific set up a claims center to process claims from area residents.  The claims center was open from 12 noon on October 16, 2005, until 6:00 p.m. on October 19, 2005.   During this time, Union Pacific received 1,100 sets of claim documents on behalf of approximately 2,500 individuals.  These documents contained claims for personal injuries, property damage (both real and personal), business/economic loss and evacuation related expenses.  Union Pacific estimates that it paid eighty-five percent (85%) of these claims for a total payout of $110,000.  Out of the total claims paid, ninety three percent (93%) were for evacuation related expenses, with the remaining seven percent (7%) being divided among property damage claims, economic loss claims and personal injury claims.

On October 19, 2005, the Plaintiffs filed this lawsuit against Union Pacific in the Circuit Court of Miller County Arkansas.  The Complaint alleges causes of action based upon nuisance, trespass, negligence, negligence *per se,* and strict liability.  The Plaintiffs are seeking relief on behalf of themselves and all others who allegedly sustained property damage, business/economic

losses, personal injuries and evacuation expenses, as a result of the Union Pacific train derailment, explosions and fires in Texarkana, Arkansas, on October 15, 2005.  On October 26, 2005, Union Pacific removed the case to this Court.

Plaintiffs now seek class certification of this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  They also seek to divide the putative class into four subclasses pursuant to Rule 23(c)(4).  These subclasses consist of a personal injury subclass, a property damage subclass, a business/economic loss subclass and an evacuation subclass.

THE PROPOSED SUBCLASSES AND CLASS REPRESENTATIVES

Plaintiffs' personal injury subclass contains all persons on October 15, 2005 who were within the exposure zone boundaries[1] who were exposed to PAHs as a result of the explosions and fires and who may have sustained inhalation injuries as a result thereof.  Stella Smith seeks to represent the personal injury subclass.

Ms. Smith lives within the exposure zone boundaries at 814 Jackson Street.  She woke on the morning of  October 15, 2005, when she heard the explosion at the Union Pacific railyard.

---

[1] Plaintiffs set out the exposure zone boundaries as follows: "Beginning at the intersection of West 11th Street and North Stateline Avenue, Texarkana, Texas; Thence along a straight line in an Easterly direction to the intersection of East 10th and Couch Streets Texarkana, Arkansas; Thence along a straight line in a Northeasterly direction to the intersection of 14th and Booker Streets Texarkana, Arkansas; Thence along a straight line in a Northeasterly direction to a point on Old Post Road 850 feet Southwest of the intersections of Old Post, Roberts, and McClure Roads Texarkana, Arkansas; Thence along a straight line in a Southeasterly direction to a point on East 9th Street 840 feet East of the intersection of East 9th Street and Meadows Road Texarkana, Arkansas; Thence along a straight line in a Southwesterly direction to the intersection of Pearl and Vernal Street Texarkana, Arkansas; Thence along a straight line in a Southwesterly direction to the intersection of Ferguson and Spring Street in Texarkana, Arkansas; Thence along a straight line in a Southwesterly direction to the intersection of Community and Logan Street Texarkana, Arkansas."

She stayed inside her house until about 6:15 a.m., at which time she heard a policeman on a bullhorn telling people to evacuate. When Ms. Smith went to her car to leave, she breathed in some of the smoke from the fires. She then drove to the McDonald's at Seventh and Hickory where she stayed for several hours. When Smith left McDonald's, she drove to her niece's house. She stayed at her niece's until the evacuation order was lifted. Ms. Smith returned to her home at around 5:00 p.m. that evening. Ms. Smith claims that while she was at McDonald's she had trouble breathing, developed a headache and felt nauseated. She claims that these symptoms still persist today.

Plaintiffs' property damage subclass contains all persons with a possessory interest in property from October 15, 2005 within class boundaries of East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to West 8th Street to Elm Street to the intersection of Ida Avenue on the west, and who may have sustained diminution in value of real property and/or physical property damage that requires and or has required repair, clean-up, and/or remediation as a result of the Union Pacific collision, explosions, and fires. Samuel Alexander seeks to represent the property damage subclass.

Mr. Alexander owns a vacant house and garage located within the class boundaries at 121 Jackson Street. He claims that this garage and its contents were badly burned as a result of the derailment, explosions and fires on October 15, 2005. Mr. Alexander's garage is one of three residential structures that was burned as a result of the fires on October 15th.[2] Mr. Alexander

---

[2] The owners of the other two structures destroyed by the fires filed individual lawsuits against Union Pacific, *Sartor v. Union Pacific Corp.,* Case No. 06-CV-4044 and *Lewis, et al. v. Union Pacific Railroad Co.,* Case No. 06-CV-4092. Both of these cases have settled.

also claims that his house sustained damage to its foundation and floors and that the surrounding vegetation was destroyed.

Plaintiffs' business/economic loss subclass contains all persons on October 15, 2005 with a possessory interest in a business operation who may have sustained an economic loss from the events described herein and who are located within the boundaries of East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to West 8th Street to Elm Street to the intersection of Ida Avenue on the west.  Gloria Bradford and her business, Books, Etc., seek to represent the business/economic loss subclass.

Ms. Bradford owns Books, Etc.  It is located within the class boundaries at 801 East Street.  Her business sells used books, used furniture and knick knacks.  In order to obtain merchandise to sell at her store, Ms. Bradford shops area garage sales.  She ordinarily spends her Saturday mornings visiting the various garage sales in and around Texarkana shopping for  items to sell in her store.  Ms. Bradford does not contend that the incident at the Union Pacific railyard kept her from shopping these Saturday garage sales.  Rather, she claims that it kept her from opening her store on that day and, as a result, she lost income during the time her business was closed.  Ms. Bradford did not return and open her store after the evacuation order was lifted on Saturday afternoon.

Plaintiffs' evacuation subclass contains all persons with a possessory interest in property within the class boundaries of  East 9th Street on the north, Ida Avenue and Forest Avenue on the south, North Oats Street on the east, and Stateline Avenue to West 8th Street to Elm Street to the interesection of Ida Avenue on the west, from October 15, 2005 to present who have lost the use and enjoyment of their property as a result of the train collision, explosions and fires, and who

6

were evacuated/forced to leave their property as a result thereof.  Gloria Bradford and Ned Burnett seek to represent the evacuation subclass.

Ms. Bradford lives within the class boundaries at 307 Fairview.  She is the owner of the business Books, Etc.  As owner of Books, Etc., Ms. Bradford spends her Saturdays visiting garage sales looking for merchandise for her store.  She and her husband usually leave their home around 6:30 to begin visiting these sales.  Ms. Bradford claims that on the morning of October 15, 2005, she, her husband, and her two granddaughters were forced to leave their home at 6:00 a.m., about 30 minutes earlier than normal.  After they left home, they shopped the various garage sales in and around Texarkana.  After they were finished, they went to their son's home in Genoa, Arkansas.  They stayed there until approximately 4:00 p.m., at which time they returned to their home.

Mr. Burnett lives within the class boundaries at 1507 Maud Street.  He was already awake when he heard the collision at the Union Pacific railyard on the morning of October 15, 2005.  He went outside and saw the explosion and resulting fire.   About 30 minutes later, the police told Mr. Burnett to evacuate.  He took his girlfriend, daughter and grandson and went to his mother's house to stay.  When the evacuation was lifted on the afternoon of October 15th, Mr. Burnett elected to stay at his mother's house instead of returning home.  He did not return home until 6:00 p.m. the following day.

<u>APPLICABLE LAW</u>

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  The decision on whether to certify a class action is within the discretion of the district court.  *See Coleman v. Watt,* 40 F.3d 255, 259 (8th Cir. 1994); *Morgan v. United Parcel Serv.,* 169 F.R.D.

349, 354 (E.D.Mo. 1996).  In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)(citations omitted).  Thus, while the Court must conduct a "rigorous analysis," *see Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), class certification is a procedural determination and should not include an inquiry into the merits of the plaintiff's claims. *Eisen,* 417 U.S. at 177-78. The plaintiff moving for class certification has the burden of showing that the requirements under Rule 23 are met.  *Coleman,* 40 F.3d at 259.

In order to be certified under Rule 23, the class must satisfy the four prerequisites set forth in Rule 23(a).  *Lang v. Kansas City Power & Light Co.,* 199 F.R.D. 640, 644 (W.D.Mo. 2001); *Paxton v. Union National Bank,* 688 F.2d 552, 559 (8th Cir. 1982).  These requirements are met if:  1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a).  These prerequisites for class certification under Rule 23(a) are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980).

In addition to the requirements under Rule 23(a), the class must also qualify under one of the three subdivisions of Rule 23(b).  *Lang,* 199 F.R.D. at 644.  In this case, the Plaintiffs are seeking certification under Rule 23(b)(3).  Therefore, they must demonstrate that the "questions

of law or fact common to the members of the class predominate over any questions affecting only individual members" and that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The Plaintiffs are also seeking to divide the putative class into subclasses pursuant to Rule 23(c)(4). This rule requires that "each subclass be treated like a class, and the provisions of this rule shall then be construed and applied accordingly." Fed.R.Civ.P. 23(c)(4)(B). Therefore, any proposed subclass must first satisfy the requirements of Rule 23(a) and one of the three subdivisions of Rule 23(b) before it can be certified as a class. *See In re Prempro,* 230 F.R.D. 555, 566 (E.D. Ark. 2005); *Lang,* 199 F.R.D. at 644.

Therefore, in order to determine if class certification is appropriate in this case, the Court must consider the above requirements with respect to each of the Plaintiffs' four proposed subclasses.

<u>DISCUSSION</u>

I.  Personal Injury Subclass

*<u>Rule 23(a)(1)-Numerosity</u>*

The first requirement under Rule 23(a) is that the class must be "so numerous that joinder of all the members is impracticable." Fed.R.Civ.P. 23(a)(1). "Although, ... no arbitrary rules regarding the necessary size of classes have been established, the plaintiff bears the burden of establishing that numerosity does exist." *Mehl v. Canadian Pacific Railway Ltd.,* 227 F.R.D. 505, 510 (N.N.D. 2005)(quoting *Belles v. Schweiker,* 720 F.2d 509, 515 (8th Cir. 1983)). A number of factors are relevant to this inquiry, the most obvious being the number of persons in the proposed class. In addition to the size of the class, the court may also consider such factors as the nature of

9

the action, the size of the individual claims, the inconvenience of trying individual suits, and any

other factor  relevant to the practicability of joining all the putative class members. *Paxton,* 688

F.2d at 560.

In this case, Plaintiff Stella Smith claims that approximately 10,000 people were exposed

to PAHs (polynuclear aromatic hydrocarbons) as a result of the explosions and fires on October

15, 2005.  Therefore, she contends that there are thousands of potential class members who may

have sustained inhalation injuries as a result of the exposure.  She contends that this number is

sufficiently numerous to make their joinder impracticable.  The Defendant Union Pacific argues

that not everyone who was exposed to the PAHs was injured.  This, it claims, is supported by the

fact that very few people sought medical attention on the day of the accident and only a handful of

personal injury claims were presented to Union Pacific at its claims center.  Therefore, Defendant

argues that the Plaintiff has not shown that the number of potential class members is so numerous

that joinder is impracticable.

The Plaintiff does not need to show the exact number of potential class members, only that

the number is such that joinder would be extremely difficult or inconvenient.  *Morgan,* 169

F.R.D. at 355 (citing *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D. Ark 1984)).  Ms.

Smith has presented a reasonable estimate of the number of people who were arguably affected by

the smoke plume on October 15th.  This number is sufficiently numerous to make joinder of

individual class members difficult.  Therefore, the Court finds that the numerosity requirement

under Rule 23(a) has been met for the personal injury subclass.

*Rule 23(a)(2)-Commonality*

The second requirement under Rule 23(a) is that "there are questions of law or fact

10

common to the class." Fed.R.Civ.P. 23(a)(2). This commonality requirement does not require that every question of law or fact be common to every member of the class. *Paxton,* 688 F.2d at 561 (citations omitted). "Rather, it is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.' " *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)(citing *Paxton,* 688 F.2d at 561)(quoting *American Finance Sys., Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md. 1974)). It is important to note that while a class may satisfy the commonality requirement of Rule 23(a), the class may fail to satisfy the "far more demanding" predominance requirement of Rule 23(b)(3). *Thompson v. American Tobacco Co. Inc.,* 189 F.R.D. 544, 549 (D. Minn. 1999)(quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1979)).

In this case, Plaintiff Stella Smith contends that the proposed class satisfies the commonality requirement because the class members share common questions of general causation and liability. The Defendant argues that the Plaintiff does not satisfy the commonality requirement because the questions of proximate cause, injury and damages are not common to the class and must be presented on an individual basis for each class member.

As stated above, this rule does not require that *every* question of law or fact be common to every member of the class. As long as there is at least one common legal question that substantially relates to the resolution of the litigation, commonality is met. Here, the proposed class members' claims are based on alleged personal injuries suffered as a result of the train derailment, explosions and fires in Texarkana, Arkansas on October 15, 2005. They all share the common questions regarding the causation of the incident and Union Pacific's liability for it. Undoubtedly, the proposed class members will present identical evidence relating to these issues,

and the resolution of these issues will apply equally to all class members.   Either of these two issues satisfy the low threshold requirement of commonality.   Therefore, the Court finds that the commonality requirement under Rule 23(a) has been satisfied for this subclass.

 *Rule 23(a)(3)-Typicality*

 The third requirement under Rule 23(a) is that the claims or defense of the representative parties are typical of the claims or defenses of the class.   Fed.R.Civ.P. 23(a)(3).   This requirement means that there are "other members of the class who have the same or similar grievance as the plaintiff."   *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996)(quoting *Donalson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977) *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977)).   This requirement is "intended to assure the claims of the class representatives are similar enough to those of the class, so that the representatives will adequately represent the class."   *In re Baycol Products Litigation,* 218 F.R.D. 197, 205 (D.Minn. 2003) (quoting *Day v. NLO, Inc.,* 144 F.R.D. 330, 334 (S.D.Ohio 1992).   In other words, the Court must consider whether the representative's interests will be aligned with those of the proposed class, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.   *In re Baycol,* 218 F.R.D. at 205 (citing *In re:  American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)).   "Factual variation in the individual claims will not normally preclude class certification if the claims arise from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."   *Alpern,* 84 F.3d 1540 (citing *Donalson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir. 1977)).

 In this case, the Plaintiff contends that her claims are typical of the class because they all arise from the same event–exposure to the smoke from the derailment fires.   She also argues that

she asserts identical legal claims as the class–personal injuries caused by breathing the PAHs contained in the smoke.  The Defendant argues that typically is not present because Ms. Smith's claims, and the defenses to those claims, are not typical of those of the proposed class members.

Although, Ms. Smith and the subclass have alleged personal injuries caused by their exposure to PAHs generated by the derailment fires, Ms. Smith's claims are not typical of the claims of the subclass.  The amount of her exposure, the dosage she received, her medical history and her susceptibility to respiratory injury make her claims atypical of the class.  Her claims, as well as those of the class, are highly individualized and will require individual-based evidence.  In pursuing her own unique claims, Ms. Smith will not advance the claims of the class.  Therefore, the Court finds that the typicality requirement under Rule 23(a) cannot be satisfied for this subclass.

### Rule 23(a)(4)-Adequacy of Representation

The fourth requirement under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4).  In determining adequacy of representation, the Court makes a two-fold inquiry to determine whether: 1) the class representatives have common interests with the members of the class, and 2) whether the class representatives will vigorously prosecute the interest of the class through qualified counsel. *Wakefield v. Monsanto Co.,* 120 F.R.D. 112, 117 (E.D.Mo. 1988)(citing *Paxton,* 688 F.2d at 562).  Adequacy is tied to both commonality and typicality.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, 117 S.Ct. 2231, 2251 (1997).

The Court has no doubts about the zeal and competence of the representative's counsel  in this case.  However, the "adequate representation requirement overlaps with the typicality

requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *In re Am. Med. Sys.,* 75 F.3d at 1083. Here, Ms. Smith's claims are not typical of the class. It will be impossible for her to adequately represent the interests of the class in this matter. Therefore, the Court finds that the adequacy of representation requirement of Rule 23(a) has not been satisfied for this subclass.

In summary, the Plaintiff, Stella Smith, has failed to show typicality and adequacy of representation for this subclass. As such, she has failed to satisfy all the requirements of Rule 23(a). This subclass can not be certified as a class action. However, even if the Plaintiff had satisfied all the requirements of Rule 23(a), this subclass still could not be certified as a class because, as indicated below, it does not qualify under Rule 23(b)(3).

### Rule 23(b)(3)-Predominance and Superiority

Certification under Rule 23(b)(3) can be maintained if "the question of law or fact common to the members of the class predominate over questions affecting only individual members," and a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *Blades v. Monsanto Company,* 400 F.3d 562, 569 (8th Cir. 2005)(citing *Amchem,* 521 U.S. at 615). The predominance portion of this rule parallels Rule 23(a)(2) in that both rules require that common questions exist. However, even if Rule 23(a)(2)'s commonality requirement is satisfied ... the predominance criterion under Rule 23(b)(3) is "far more demanding." *Amchem,* 521 U.S. at 623-24. This rule "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* To determine if a common question predominates over individual questions the Court looks to the nature of the evidence necessary to make out a prima facie case. *Blades,* 400 F.3d at 566 (citing

*In re Visa Check/Master Money Antitrust Litig.,* 280 F.3d 124, 136-40 (2nd Cir. 2001)).  If the members of the proposed class need to present evidence that varies from member to member to make a prima facie showing of a given question, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it is a common question.  *Id.*

In this matter, Ms. Smith claims that her personal injuries (difficulty breathing, headaches and nausea) were caused by inhaling PAHs contained within the smoke plume generated by the explosions and fires on October 15, 2005.  The questions of whether Union Pacific is liable for the explosions and fires and whether the PAHs contained in the smoke plume are capable of causing harm are common and can be proven on a class-wide basis.  However, this is not true of the questions concerning proximate causation, injury and damages.  *See Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598 (5th Cir. 2006).  These questions are unique to each class member and will require evidence that varies from member to member.  Each class member will be required to individually testify as to his or her exposure, dosage, medical history, health effects and damages. The end result will be a series of individual  mini-trials that will dominate the proceedings.  As such, the common questions of law or fact common to the class are not predominate in this subclass.

The superiority portion of Rule 23(b)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  In determining whether a class action is the superior method for adjudicating the claims before it, the Court will look at four factors: the class members' interest in individually controlling their separate actions; the extent and nature of existing litigation by class members concerning the

same claims; the desirability of concentrating the litigation in the particular forum; and the likely difficulties in the management of a class action.  Fed.R.Civ.R. 23(b)(3).

Here, the difficulties in class management overwhelm any efficiencies that could be secured through class-wide adjudication. Each class member will be required to present highly individualized evidence regarding specific causation and damages.  The presentation of this evidence will constitute the majority of the trial.  Therefore, any judicial economy that would be achieved by class certification is lost.  As such, a class action is not the superior method for adjudicating the Plaintiff's or the proposed class member's personal injury claims against the Defendant.

The Plaintiff has failed to satisfy the requirements of Rules 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure.  Therefore, the Court finds that class certification is not appropriate for the Plaintiff's personal injury subclass.

## II.  Property Damage Subclass

### *Rule 23(a)(1)-Numerosity*

As stated above, the numerosity requirement of Rule 23(a) is met when the class is "so numerous that joinder of all the members is impracticable."  Fed.R.Civ.P. 23(a)(1).  Here, Plaintiff Samuel Alexander claims that there are approximately 2,942 residential structures within the class boundaries.  Therefore, he contends that there are thousands of potential class members who may have sustained property damages or a diminution in the value of their property as a result of the derailment, explosions and fires on October 15, 2005.  He contends that this number is sufficiently numerous to make their joinder impracticable.  The Defendant Union Pacific argues that there is no evidence that anyone suffered any property damage as a result of the derailment,

explosions and/or fires, other than Mr. Alexander and his two neighbors who have already settled their individual lawsuits with Union Pacific.  It contends that a class of one is not so numerous that joinder would be impracticable.

The Plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder would be extremely difficult or inconvenient.  *Morgan,* 169 F.R.D. at 355 (citing *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D. Ark 1984)).  Mr. Alexander claims that his garage is one of three residential structures that was destroyed/damaged by the explosions and fires on October 15th.  However, he does not give a reasonable estimate of the number of other structures that may have been damaged.  In fact, the evidence shows that Mr. Alexander's aunt's house, which is about 300 feet away from his property, was not damaged. Thus, there is no evidence before the Court that the number of potential class members is so numerous that joinder would be impracticable.  Therefore, the numerosity requirement under Rule 23(a) is satisfied as to Mr. Alexander's property damage claim.

Mr. Alexander also claims that there are 2,942 residential properties within the class boundaries whose property values may have been diminished by this incident.  This estimate is sufficiently numerous to make joinder of individual class members difficult.  Therefore, the Court finds that the numerosity requirement under Rule 23(a) has been met as to Mr. Alexander's diminution in value claim.

### *Rule 23(a)(2)-Commonality*

As stated above, the commonality requirement under Rule 23(a) is met when "there are questions of law or fact common to the class."  Fed.R.Civ.P. 23(a)(2).  Here, Plaintiff Samuel Alexander contends that the proposed class satisfies the commonality requirement because the

class members share common questions of general causation and liability. The Defendant argues that the Plaintiff does not satisfy the commonality requirement because there are multiple factors that must be presented on a property by property basis before it can be determined if there is a diminution in property values, and if so, how much.

This rule does not require that *every* question of law or fact be common to every member of the class. As long as there is at least one common legal question that substantially relates to the resolution of the litigation, commonality is met. Here, the proposed class members' claims are based on their alleged diminution in property values as a result of the train derailment, explosions and fires in Texarkana, Arkansas on October 15, 2005. They all share the common questions regarding the causation of the incident and Union Pacific's liability for it. Undoubtedly, the proposed class members will present identical evidence relating to these issues, and the resolution of these issues will apply equally to all class members. Either of these two issues satisfy the low threshold requirement of commonality. Therefore, the Court finds that the commonality requirement under Rule 23(a) has been satisfied as to this claim.

### Rule 23(a)(3)-Typicality

As stated above, the typicality requirement under Rule 23(a) is met if the claims or defense of the representative parties are typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). Here, Mr. Alexander contends that his claim is typical of the class because they all arise from the same event–the derailment, explosions and fires at the Union Pacific railyard. He also argues that he asserts identical legal claims as the class–the diminution in the value of his property. The Defendant argues that typically is not present because Mr. Alexander's claim is not typical of those of the proposed class members.

18

Although, Mr. Alexander and the class have alleged a diminution in their property values as a result of the train derailment, explosions and fires, Mr. Alexander's claim is not typical of the claims of the other class members in this subclass. Mr. Alexander's property was destroyed by fire. None of the proposed class members have this same grievance. The diminution in value of Mr. Alexander's property is not typical, as no other class member's property was destroyed or damaged by the explosions and/or fires at the Union Pacific railyard. Mr. Alexander's claim is unique. Thus, in pursuing his claim, Mr. Alexander will not advance the claims of the class. Therefore, the Court finds that the typicality requirement under Rule 23(a) cannot be satisfied for this claim.

### *Rule 23(a)(4)-Adequacy of Representation*

As stated above, the adequacy requirement under Rule 23(a) is met if the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Adequacy is tied to both commonality and typicality. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, 117 S.Ct. 2231, 2251 (1997).

The Court has no doubts about the zeal and competence of the representative's counsel in this case. However, the "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *In re Am. Med. Sys.,* 75 F.3d at 1083. Here, Mr. Alexander's claim is not typical of the class. It will be impossible for him to adequately represent the interests of the class in this matter. Therefore, the Court finds that the adequacy of representation requirement of Rule 23(a) has not been satisfied for this claim

In summary, the Plaintiff, Samuel Alexander, has failed to satisfy the numerosity

requirement of Rule 23(a) in regard to his property damage claim.  He has also failed to satisfied

the typicality and adequacy of representation requirements of Rule 23(a) in regard to his

diminution in property values claim.  As such, neither of these claims are suitable for class

certification.  However, even if the Plaintiff had satisfied all the requirements of Rule 23(a), this

subclass still could not be certified as a class because, as indicated below, it does not qualify

under Rule 23(b)(3).

     _Rule 23(b)(3)-Predominance and Superiority_

     As set out above, certification under Rule 23(b)(3) can be maintained if  "the question of

law or fact common to the members of the class predominate over questions affecting only

individual members," and a "class action is superior to other available methods for the fair and

efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3); _Blades v. Monsanto Company,_

400 F.3d 562, 569 (8th Cir. 2005)(citing _Amchem,_ 521 U.S. at 615).  This requirement tests

whether the proposed class is sufficiently cohesive to warrant adjudication by representation.

_Amchem,_ 521 U.S. at 623-24.

     Here, the questions affecting individual class members will dominate this proceeding.

Factors such as a property's damage, location, age, condition, structural makeup and history are

determinative on the issue of a property's devaluation.  Since these factors will vary from property

to property, the issue of diminished value will have to be analyzed for each individual property on

a case by case basis.   The end result will be a series of individual mini-trials that will dominate

the proceeding.  Therefore, the Court finds that the predominance requirement under Rule

23(b)(3) has not been met.

     The superiority portion of Rule 23(b)(3) requires "that a class action is superior to other

available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Here, the difficulties in class management overwhelm any efficiencies that could be secured through class-wide adjudication. Highly individualized evidence will have to be presented on each property in order to determine if there has been a diminution in value, and if so, how much. The presentation of this evidence will constitute the majority of the trial. Therefore, any judicial economy that would be achieved by class certification is lost. As such, a class action is not the superior method for adjudicating this claim against the Defendant.

The Plaintiff has failed to satisfy the requirements of Rules 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure. Therefore, the Court finds that class certification is not appropriate for the Plaintiff's property damage subclass.

### III. Business/Economic Loss Subclass

*Rule 23(a)(1)-Numerosity*

As stated above, the first requirement under Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). Here, Plaintiffs Gloria Bradford and Books, Etc. claim that there are approximately 276 businesses within the class boundaries. Therefore, they contend that there are hundreds of potential class members who may have sustained an economic loss as a result of the incident on October 15, 2005. They contend that this number is sufficiently numerous to make the joinder of all individual members impracticable. The Defendant Union Pacific argues that this number does not take into account those businesses that have been made whole by the railroad during its claims process. Therefore, Defendant argues that the Plaintiffs have not shown that the number of class members is so numerous that joinder would be  impracticable.

21

The Plaintiffs do not need to show the exact number of potential class members, only that the number is such that joinder would be extremely difficult or inconvenient. *Morgan,* 169 F.R.D. at 355 (citing *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D. Ark 1984)).  The Court believes that they have done this.  Ms. Bradford and Books, Etc. have presented a reasonable estimate of the number of potential class members.  This number is sufficiently numerous, even after taking into account that some may have already been made whole by the railroad, to make joinder of individual class members difficult or inconvenient.  Therefore, the Court finds that the numerosity requirement under Rule 23(a) has been satisfied for this subclass.

### *Rule 23(a)(2)-Commonality*

As stated above, the second requirement under Rule 23(a) is that "there are question of law or fact common to the class."  Fed.R.Civ.P. 23(a)(2).  Here, Gloria Bradford and Books, Etc. contend that the proposed class satisfies the commonality requirement because the class members share common questions of causation and liability.  The Defendant argues that the Plaintiffs do not satisfy the commonality requirement because there are various issues and facts not common to the class that must be presented on an individual basis before economic loss liability can be determined.

This rule does not require that *every* question of law or fact be common to every member of the class.  As long as there is at least one common legal question that substantially relates to the resolution of the litigation, commonality is met.  Here, the proposed class members' claims are based on alleged injuries suffered as a result of the train derailment, explosions and fires in Texarkana, Arkansas on October 15, 2005.  They all share the common questions regarding the causation of the incident and Union Pacific's liability for it.  Undoubtedly, the proposed class

members will present identical evidence relating to these issues, and the resolution of these issues will apply equally to all class members.   Either of these two issues satisfy the low threshold requirement of commonality.  Therefore, the Court finds that the commonality requirement under Rule 23(a) has been satisfied for this subclass.

*Rule 23(a)(3)-Typicality*

As stated above, the third requirement under Rule 23(a) is that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Fed.R.Civ.P. 23(a)(3). Here, Ms. Bradford and Books, Etc. claim that typicality exists because their claims and those of the  proposed class members arise from the same event and share the same theory of recovery. The Defendants argue that typically is not present because the claims of Ms. Bradford and Books, Etc., and the defenses to those claims, are not typical of those of the proposed class members.

As stated above, the purpose of this requirement is assure the claims of the class representatives are similar enough to those of the class, so that the representatives will adequately represent the class.  Although, the Plaintiffs have alleged an economic loss due to the closing of her business on Saturday, October 15, 2005, her claim of economic loss is not typical of those of the other class members.  Books, Etc. has limited hours of operation on Saturdays due to the fact that Ms. Bradford spends part of the day shopping the various garage sales in and around Texarkana.  Her claim of economic loss is not typical of those businesses with regular Saturday business hours.  In pursuing her claim, Ms. Bradford and Books, Etc. will not advance the claims of the class.  Therefore, the Court finds that the typicality requirement under Rule 23(a) cannot be satisfied for this subclass.

*Rule 23(a)(4)-Adequacy of Representation*

As stated above, the fourth requirement under Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4).  Adequacy is tied to both commonality and typicality.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, 117 S.Ct. 2231, 2251 (1997).

The Court has no doubts about the zeal and competence of the representatives' counsel in this case.  However, the "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members."  *In re Am. Med. Sys.,* 75 F.3d at 1083.  Here, the Plaintiffs' claim is not typical of the class.  It will be impossible for them to adequately represent the interests of the class in this matter.  Therefore, the Court finds that the adequacy of representation requirement of Rule 23(a) has not been satisfied for this claim.

In summary, the Plaintiffs, Gloria Bradford and Books, Etc., have failed to satisfy the typicality and adequacy of representation requirements of Rule 23(a).  As such, this subclass is not suitable for class certification.  However, even if the Plaintiffs had satisfied all the requirements of the rule, the subclass could not be certified as a class because, as indicated below, it does not qualify under Rule 23(b)(3).

*Rule 23(b)(3)-Predominance and Superiority*

As set out above, certification under Rule 23(b)(3) can be maintained if "questions of law or fact common to the members of the class predominate over questions affecting only individual members," and a "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3); *Blades v. Monsanto Company,* 400 F.3d

562, 569 (8th Cir. 2005)(citing *Amchem,* 521 U.S. at 615).  This requirement tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  *Amchem,* 521 U.S. at 623-24.

Here, questions affecting individual class members will dominate this proceeding.  Each business will have to present individualized proof as to the facts and circumstances surrounding its claimed economic loss.  Such proof will include whether a particular business is open on Saturdays, its normal hours of operation and the length of its closure on October 15th.  The end result will be a series of individual mini-trials to determine if an economic loss has in fact taken place.  These mini-trials will dominate the proceedings.  As such the common questions of law or fact common to the class are not predominate in this subclass.

The superiority portion of Rule 23(b)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  Here, the difficulties in class management overwhelm any efficiencies that could be secured through class-wide adjudication. Highly individualized evidence will have to be presented on each business in order to determine if there has been an economic loss, and if so, how much.  The presentation of this evidence will constitute the majority of the trial.  Therefore, any judicial economy that would be achieved by class certification is lost.  As such, a class action is not the superior method for adjudicating this claim against the Defendant.

The Plaintiffs have failed to satisfy the requirements of Rules 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure.  Therefore, the Court finds that class certification is not appropriate for the Plaintiffs' business/economic loss subclass.

25

IV.  Evacuation Subclass

*Rule 23(a)(1)-Numerosity*

As stated above, the numerosity requirement of Rule 23(a) is met when the class is "so numerous that joinder of all the members is impracticable." Fed.R.Civ.P. 23(a)(1).  Here, Plaintiffs Gloria Bradford and Ned Burnett claim that there are 7,982 individuals living within the class boundaries.  They contends that there are thousands of potential class members who were forced to evacuate as a result of the derailment, explosions and fires on October 15, 2005.  They contend that this number is sufficiently numerous to make joinder impracticable.  The Defendant Union Pacific argues that not everyone within the evacuation zone was evacuated and many of the ones who did evacuate have already been paid by Union Pacific.  Therefore, the Defendant argues that the Plaintiffs have not shown that the number of class members is so numerous that joinder would be impracticable.

The Plaintiffs do not need to show the exact number of potential class members, only that the number is such that joinder would be extremely difficult or inconvenient.  *Morgan,* 169 F.R.D. at 355 (citing *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D. Ark 1984)).  The Court believes that they have done this.  Ms. Bradford and Mr. Burnett have presented a reasonable estimate of the number of potential class members.  This number is sufficiently numerous, even after taking into account that not everyone evacuated and some may have already been paid by the railroad, to make joinder of individual class members difficult or inconvenient.  Therefore, the Court finds that the numerosity requirement under Rule 23(a) has been satisfied for this subclass.

*Rule 23(a)(2)-Commonality*

As stated above, the commonality requirement under Rule 23(a) is met when "there are

questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).  Here, Ms. Bradford and

Mr. Burnett contend that the proposed class satisfies the commonality requirement because the

class members share common questions of  general causation and liability.  The Defendant argues

that the Plaintiffs do not satisfy the commonality requirement because there are numerous

questions not common to the class that must be presented for each class member.

This rule does not require that *every* question of law or fact be common to every member

of the class.  As long as there is at least one common legal question that substantially relates to the

resolution of the litigation, commonality is met.  Here, the proposed class members' claims are

based on their forced evacuation as a result of the train derailment, explosions and fires in

Texarkana, Arkansas on October 15, 2005.  They all share the common questions regarding the

causation of the incident and Union Pacific's liability for it.  Undoubtedly, the proposed class

members will present identical evidence relating to these issues, and the resolution of these issues

will apply equally to all class members.   Either of these two issues satisfy the low threshold

requirement of commonality.  Therefore, the Court finds that the numerosity requirement under

Rule 23(a) has been satisfied for this subclass.

### Rule 23(a)(3)-Typicality

As stated above, the typicality requirement under Rule 23(a) is met if the claims or defense

of the representative parties are typical of the claims or defenses of the class.  Fed.R.Civ.P.

23(a)(3).  In this case, Ms. Bradford and Mr. Burnett contend that their claims are typical of the

class because they all arise from the same event–the derailment, explosions and fires at the Union

Pacific railyard. They also argue that they assert identical legal claims as the class–their

evacuation and loss of use and enjoyment of their property.  The Defendant argues that typically is

not present because the Plaintiffs' claims are not typical of those of the proposed class members.

Although, Ms. Bradford and Mr. Burnett have alleged that they were forced to evacuate and lost the use and enjoyment of their property as a result of the train derailment, explosions and fires, their claims are not typical of the claims of the other class members.  Ms. Bradford left her home 30 minutes earlier than normal and Mr. Burnett did not return when the evacuation order was lifted.  Their evacuations and loss of use and enjoyment of their property are not typical. Therefore, in pursuing their claims, Ms. Bradford and Mr. Burnett  will not advance the claims of the class.  Therefore, the Court finds that the typicality requirement of Rule 23(a) has not been satisfied at to this subclass.

### Rule 23(a)(4)-Adequacy of Representation

As stated above, the adequacy requirement under Rule 23(a) is met if the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4). Adequacy is tied to both commonality and typicality.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 626, 117 S.Ct. 2231, 2251 (1997).

The Court has no doubts about the zeal and competence of the representative's counsel  in this case.  However, the "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members."  *In re Am. Med. Sys.,* 75 F.3d at 1083.  Here, the Plaintiffs' claims are not typical of the class.  It will be impossible for them to adequately represent the interests of the class in this matter.  Therefore, the Court finds that the adequacy of representation requirement of Rule 23(a) has not been satisfied for this subclass.

In Summary, the Plaintiffs, Ms. Bradford and Mr. Burnett, have failed to satisfy the

typicality and adequacy of representation requirements of Rule 23(a)  As such, they have failed to satisfy all the requirements of Rule 23(a).  This subclass is not suitable for class certification.  However, even if the Plaintiffs had satisfied all the requirements of Rule 23(a), this subclass still could not be certified as a class because, as indicated below, it does not qualify under Rule 23(b)(3).

### Rule 23(b)(3)-Predominance and Superiority

As set out above, certification under Rule 23(b)(3) can be maintained if  "the question of law or fact common to the members of the class predominate over questions affecting only individual members," and a "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3); *Blades v. Monsanto Company,* 400 F.3d 562, 569 (8th Cir. 2005)(citing *Amchem,* 521 U.S. at 615).  This requirement tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem,* 521 U.S. at 623-24.

Here, questions affecting individual class members will dominate this proceeding.  Each class member will have to present evidence that they were home on the Saturday in question and that they actually evacuated.  Since this evidence will vary from individual to individual, the end result will be a series of mini-trials that will dominate the proceeding.  Therefore, the Court finds that the predominance requirement under Rule 23(b)(3) has not been satisfied for this subclass.

The superiority portion of Rule 23(b)(3) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  Here, the difficulties in class management overwhelm any efficiencies that could be secured through class-wide adjudication. Individualized evidence will have to be presented for

each class member to determine if they evacuated, and if so, what are their damages.  The presentation of this evidence will constitute the majority of the trial.  Therefore, any judicial economy that would be achieved by class certification is lost.  As such, a class action is not the superior method for adjudicating this claim against the Defendant.

The Plaintiff has failed to satisfy the requirements of Rules 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure.  Therefore, the Court finds that class certification is not appropriate for the Plaintiff's evacuation subclass.

<u>CONCLUSION</u>

The Plaintiffs have failed to demonstrate that they satisfy the requirements of Rule 23 for any of their proposed subclasses and that class certification is appropriate in this case.  Therefore, the Plaintiffs' Motion for Class Certification is hereby **denied**.  An order of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 28th day of September, 2007.


    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

30